(February 10, 1892.)

## BURKE ET AL. v. McDONALD ET AL.

[29 Pac. 98.]

JURORS—CHALLENGES FOR CAUSE AND PEREMPTORY—IMPROPER CON-
DUCT—INSTRUCTIONS—LOCATION OF MINING CLAIM—PARTY DOES
NOT LOSE PEREMPTORY CHALLENGE WHEN DISCOVERED JUROR WAS
INCOMPETENT.—1. A juror who is incompetent under the statute
swears falsely upon examination on his *voir dire*, and thereby com-
pels the plaintiff to exhaust one of his peremptory challenges, to
exclude him, and before the jury is completed plaintiff discovers
that said juror was incompetent, and offers to make proof thereof,
he should be permitted to do so, and upon satisfactory proof being
made, his peremptory challenge should be restored to him.

IMPROPER CONDUCT GROUND FOR REVERSAL.—2. A judgment in favor
of a party guilty of improper conduct calculated to influence
the jury or any member thereof, in his favor, in rendering the ver-
dict, should be reversed and a new trial granted on the ground
of public policy.

LOCATION OF MINING CLAIM.—3. "A valid location of a mining claim
may be made whenever the prospector has discovered such indica-
tions of mineral that he is willing to spend his time and money
in following with the expectation of finding ore," is a proper in-
struction, and changing the word "willing" to "justified" radically
changes the instruction, and is an improper modification.

DATE OF DISCOVERY OF CLAIM.—4. Where a discovery is made by a
prospector of such a character as to entitle the prospector to make
a valid location on the 16th day of September, and he sets his
discovery stake on that day, partially stakes and marks his claim
on the 17th, and completes his staking and marking of boundaries
according to law on the 18th, his discovery and location will date
from the sixteenth day of September.

(Syllabus by the court.)

APPEAL from District Court, Shoshone County.

Woods & Heyburn, for Appellants.

Where a peremptory challenge has been exercised against a
juror, who could have been excluded for cause, which would
undoubtedly have given them another peremptory challenge,
which they swore they desired to exercise against another juror,
whom it appears from the record they were forced to retain,
the court, with the facts fully before it, refused to recall the

juror or grant plaintiffs any relief. This .ras error, by which the plaintiffs were prevented from having a fair trial. (*The Anarchists' Case,* 123 U. S. 131, 8 Sup. Ct. Rep. 22; *Ochs v. People,* 124 Ill. 399, 16 N. E. 662; *Theisen v. Johns,* 72 Mich. 285, 40 N. W. 727; *Thurman v. State,* 27 Neb. 628, 43 N. W. 404; *People v. Price,* 53 Hun, 185, 6 N. Y. Supp. 833. See *State v. Brecht,* 41 Minn. 50, 42 N. W. 602; *Balding v. State,* 23 Tex. App. 172, 4 S. W. 579; *People v. Brown* (Cal.), 13 Pac. 222; *Hopt v. People,* 120 U. S. 430, 7 Sup. Ct. Rep. 614; *Hencke v. Railway Co.,* 769 Wis. 401, 34 N. W. 243.) The fact that a notice of location is not recorded is immaterial in the absence of evidence of a local rule or custom regarding it. (*Souter v. Maguire,* 78 Cal. 543, 21 Pac. 183; *Thompson v. Spray,* 72 Cal. 533, 14 Pac. 182.) If a discovery at any time before any rights intervened, under a valid location, that the location would be valid. (*Zollars etc. Min. Co. v. Evans,* 2 McCrary, 39, 5 Fed. 172, 4 Morr. Min. Rep. 407; *Jupiter Min. Co. v. Bodie Co.,* 7 Saw. 96, 11 Fed. 666, 4 Morr. Min. Rep. 411; *Van Zant v. Argentine Min. Co.,* 2 McCrary, 159, 8 Fed. 725, 4 Morr. Min. Rep. 441; *Golden Terra Min. Co. v. Mahler* (Dak.), 4 Morr. Min. Rep. 390.) Reversible error if jury or jurors were entertained while in charge of sheriff by a party to the litigation. (*People v. Backus,* 5 Cal. 275; *People v. Bonney,* 19 Cal. 445; *People v. Brannigan,* 21 Cal. 337; *McLain v. State,* 10 Yerg. 241, 31 Am. Dec. 573; *Short v. West,* 31 Ind. 368; *Aetna Ins. Co. v. Grube,* 6 Minn. 85; *Jumperty v. State,* 21 Ill. 411; *Organ v. State,* 26 Miss. 78.) Where the successful party to a suit is shown to have attempted by improper means to influence the verdict in his favor, by corrupting or intimidating particular jurors, or arousing prejudice in their minds by undue hospitalities or civilities, the verdict will be set aside on the ground of public policy, without reference and without considering whether the attempt was successful or not." (Hayne on New Trial and Appeal, sec. 48; *Ritchie v. Holbrook,* 7 Serg. & R. 458; *McDaniels v. McDaniels,* 40 Vt. 374, 94 Am. Dec. 408; *Bradbury v. Cony,* 62 Me. 227, 16 Am. Rep. 449, and note.)

McBride & Allen, W. H. Claggett, Frank Ganahl and Albert Hagan, for Respondents.

No specifications of the particular errors upon which the plaintiffs would rely was contained in the notice of intention to move for a new trial, nor was any such embraced or contained in the motion itself. (*Partridge v. San Francisco,* 27 Cal. 415; *Hayden v. Jordan,* 28 Cal. 312; *Leroy v. Rogers,* 30 Cal. 233, 89 Am. Dec. 88; *Zenith Co. v. Irvin,* 32 Cal. 333; *Love v. S. N. L. W. Co.,* 32 Cal. 350; *Barstow v. Newman,* 34 Cal. 91; *Beans v. Emanuelle,* 35 Cal. 320.) "Where the party moves for a new trial on the ground of misconduct on the part of the jury, which he pleads during the trial, he must aver in his motion and show affirmatively that he and his counsel were ignorant, until after the jury retired, of the fact of such misconduct." (*Woodruff v. Richardson,* 20 Conn. 238; *Pettibone v. Phelps,* 13 Conn. 445, 35 Am. Dec. 88, and note; *Allen v. Blunt,* 2 Wood. & M. 121, 148, Fed. Cas. No. 217; *Martin v. Tidwell,* 36 Ga. 332, 345; *Hunter v. State,* 43 Ga. 484, 524; *Gogswell v. State,* 49 Ga. 103; *McAllister v. Sibley,* 25 Me. 474, 487; *Gibson v. Williams,* 39 Ga. 660; *Brown v. State,* 28 Ga. 439; *Cannon v. Bullock,* 26 Ga. 431; *Barlow v. State,* 4 Black, 114.)

MORGAN, J.—The plaintiffs allege that they, and each of them, are citizens of the United States; that prior to the sixth day of December, 1887, the plaintiffs were, ever since have been, and now are the owners, subject to the paramount title of the United States, and in the possession and entitled to the possession, of that certain mine containing a lode of rock in place, bearing gold, silver and other precious metals, situated in Yreka mining district, Shoshone county, Idaho, called the "Mammoth," and further particularly describing it; "that the defendants, claiming to be the owners of an adjacent mining claim, called the 'Lackawana Mining Claim,' upon the seventh day of December, 1887, wrongfully caused said Lackawana mining claim to be so surveyed as to crop out upon and overlap the said Mammoth mining claim and lode, and included a portion thereof, described as follows [here follows a description of the part of the Mammoth claim alleged to be included in the lines of the Lackawana], containing an area of something over eleven acres; that the defendants have made application for a

patent in the United States land office, and given notice thereof; that in said application the defendants wrongfully set up that they are in possession of the whole of that part of the Mammoth claim included in the lines of the Lackawana; that the plaintiffs duly filed their protest in the United States land office, and adverse claim to said application, and that proceedings are stayed in said office to await the result of this suit; that the said claim for patent is a cloud upon the title of these plaintiffs." The plaintiffs pray that their title to and possession of said mining claim be quieted, for injunction, and for other relief. The defendants deny, specifically, each and all of the allegations of the plaintiffs, claim title and possession in themselves of the whole of the Lackawana claim, and ask for judgment that the suit of plaintiffs be dismissed, that the defendants be adjudged to be the owners of, and in possession of, said claim, and the whole thereof; for injunction and costs. The cause was tried before the Honorable Willis Sweet, J., and a jury, resulting in a verdict and judgment in favor of the defendants. The plaintiffs moved the court to set aside the verdict, and for a new trial, which being denied, the plaintiffs bring the cause to this court on appeal.

The plaintiffs assign the following as errors of which this court, in the present condition of the transcript, can take notice, to wit: "The court erred in refusing to recall Juror Pressey for examination on his *voir dire,* and in forcing plaintiffs to a peremptory challenge of the said juror." The statement shows that Juror Henry Pressey, when upon examination on his *voir dire,* stated that he did not stand in the relation of debtor or creditor to either party to the action; that he was acquainted with all the parties. He was examined at considerable length both by the attorneys for the plaintiffs and by the court. He was finally challenged for cause for the reason that he had indorsed checks and deposited them in the bank, for the payment of which some of the plaintiffs were responsible, and he did not know whether they had been paid or not. The court denied the challenge, and the plaintiffs excepted. The plaintiffs then challenged the said Henry Pressey peremptorily. On the next day, and before the panel for the jury was completed, the attorney for the plaintiffs requested

the court to recall said Pressey, and place him in the jury-box, and that plaintiffs be permitted to prove that said Pressey was largely indebted to certain of the defendants in the action, and was so indebted at the time of his examination. This request was made in order that the plaintiffs could secure the exclusion of said Pressey for cause, and not be compelled to exhaust one of their peremptory challenges upon him. This was denied by the court, and the plaintiffs took exception. On the motion for a new trial was produced, among others, the affidavit of W. B. Heyburn, one of the plaintiffs and one of the attorneys for the plaintiffs, in which he testifies to the above facts in relation to the examination of Henry Pressey as a juror, and, further, that, at the time of said examination, he, said Pressey, was indebted to Michael McHale, one of the defendants herein, in the sum of $200, and to V. M. Clement, one of the principal witnesses for the defendants, and the person who had charge of the preparation and conduct of this cause and trial for the defendants, in the sum of $1,060, and said Pressey was further indebted to Scott McDonald, defendant herein, in the sum of $1,702.50; that the defendants herein did not disclose to the court or to the plaintiffs the fact that said juror was swearing falsely, and said challenge for implied bias was denied by defendants and by the court; that, by virtue of said facts and acts of said juror and the defendants, plaintiffs were obliged to use one of their peremptory challenges upon said Pressey; that there was afterward called, as a juror in said cause, one Andrew Larson, who duly qualified under oath as a juror, and who was an unfit and improper person to act in said cause, because of his intimate relationship with Scott McDonald, defendant, and his intimate association with him, calculated to prejudice and bias the mind of said juror against the plaintiffs and in favor of said defendants; that by reason of these things plaintiffs desired to challenge said juror peremptorily, but were unable so to do, for the reason that they had been compelled to exhaust their peremptory challenge, so intended to be used, upon said Pressey. The facts stated in this affidavit are not denied by the defendants, and the fact that said indebtedness existed, as stated, is further proven by the fact that said Pressey filed his petition in bankruptcy on

the next day after said examination, and that said indebtedness was stated and sworn to in the schedule of debts affixed thereto. This indebtedness was, of course, known to said Pressey at the time of his said examination; and that he committed willful and deliberate perjury is beyond question. That the said indebtedness of this juror was also known to the defendants, this court cannot doubt. By neglecting to disclose the facts or instruct their attorney to confess the challenge, the defendants, if they were present themselves, became morally guilty of the offense, in endeavoring to compel the acceptance of this juror contrary to law, or compel the plaintiffs to exhaust one of their peremptory challenges to exclude him. In the case of *Hopt v. People,* 120 U. S. 430, 7 Sup. Ct. Rep. 614, the court say: "When a challenge to a juror for actual or implied bias is disallowed, and the juror is thereupon peremptorily challenged and excused, and an impartial and competent juror is obtained in his place, no injury is done to the defendant, if, until the jury is completed, he has other peremptory challenges which he can use." (See, also, *Anarchists' Case,* 123 U. S. 131, 8 Sup. Ct. Rep. 22.) The converse of this proposition would be equally true. If the plaintiff is compelled to use a peremptory challenge to exclude a juror who is incompetent under the statute, and before the jury is completed the plaintiff desired to use a peremptory challenge, and could not do so, because his peremptory challenges were exhausted, then it works an injury to the party for which a new trial should be granted. In this case the juror Pressey, in order to force himself upon the jury or compel the plaintiffs to use a peremptory challenge, swore to a deliberate falsehood. When this was discovered the court should have permitted the facts to be shown, and, when shown, should have allowed the plaintiffs another peremptory challenge.

The fifteenth assignment of error, which was passed upon by the court below in the order overruling the motion for new trial, is: "Misconduct of the jury, as shown by the affidavits on file, used in plaintiffs' motion for a new trial." The affidavit of John Smith, filed on August 12, 1890, and used on motion for new trial, states that on the eighth day of August, while the jury were in charge of the sheriff, and, under the

direction of the court, were viewing the premises in controversy, they were entertained by the defendants, or some of them, with luncheon and refreshments, beer and cigars; that the defendants procured two cases of beer for that purpose; that the jury drank it freely; that while they were drinking said beer a part of the jury were in a room separate and apart from the officer having them in charge; that V. M. Clement, the superintendent for the defendants, and one of the principal witnesses, and the person who had the general management and preparation of the cause for the defendants, was present with said jurors while so separated, drew the corks, and handed the beer and cigars to the jurors, of which the said jurors partook. George H. Rice also swears that he was one of the jurors on the trial of this cause, corroborates the statement of John Smith, and states that the jury separated, and a portion of them, so separated from the officer having them in charge, were drinking beer with V. M. Clement and John H. Hammond, witnesses on behalf of the defendants. Thomas Argyle, the deputy sheriff who had charge of said jury, swears that the jury, after arrival at the office, did not separate; but the statements in the affidavits were that the jury separated before arriving at the office; that a part of the jury stopped at the air compressors with the deputy, and the balance went down with Clement to the office, and, when those with the officer went on down to the office, the members of the jury who had preceded them were in the office, drinking beer with Clement. These facts are not denied by Argyle, except in a general way, in closing his affidavit, where he states that he has heard the affidavit of John L. Smith read, and that the same is untrue and false. Again, in his affidavit in reply to that of W. B. Heyburn, the said Argyle states that the lunch was furnished by him (Argyle), and further states that none of the jury knew where the lunch came from; and, a line or two further on, states that he (Argyle) does not yet know by whom the lunch was ordered to be brought upon the ground, and that he has not yet paid for the same, merely because the bill has not yet been presented. The statement of Mr. Argyle that he furnished the lunch is hardly consistent with his statement that he does not know by whom the lunch was ordered, and that

he did not order it himself. The court is forced to the conclusion that the facts stated by Smith and Rice are substantially true. That lunch and other refreshments were furnished the jury is not complained of; but it is the duty of the sheriff to furnish a jury with all proper refreshments, and it is his business to know where the luncheon comes from, and who orders it. He should order it himself, and should not permit either of the parties to order it, and it should be paid for by the county or by the parties equally. The deputy further states that nothing improper was said to the jury; but the jury having separated for a time, a part stopping at the compressors, while the rest went on to the office, and were found there in company with Clement, shows that he does not know what was said to them. John King also testifies that while the jury were sitting in the trial of said cause, and under instructions from the court, Simeon G. Reed, one of the parties in interest therein, did on different occasions drink at the bar of the Osborne Hotel with several of said jurors, and did invite and treat said jurors on several occasions in presence of said affiant, and did buy and pay for, in the presence of said jurors, whisky, beer and cigars at said bar, and said jurors did accept and receive said beer, whisky and cigars from said Reed. Other affidavits of similar character, with reference to other defendants, are produced on the motion for new trial. In reply to the affidavit of King, said Reed swears that he never knowingly invited any of said jurors to drink; that he was a stranger, and only knew by name a few of the jurors; that he has no recollection of treating or offering to treat, at said bar, any person whom he knew to be a juror. This does not deny the statement of the said King.

So long as trials by jury obtain in this country, it is necessary that all possible safeguards should be thrown around them. The supreme court of Idaho say, in the case of *Palmer v. Railway Co.*, 2 Idaho, 315, 13 Pac. 429; "It is not necessary for us to find that this conduct had any effect upon the verdict, in order to sustain this motion for new trial. It is enough to say that it was calculated so to do." In *McDaniels v. McDaniels*, 40 Vt. 374, 94 Am. Dec. 408, the court say: "There is no practicable method to so analyze the mental operations

of the jurors as to determine whether, in point of fact, the verdict would have been the same if the trial had been conducted, as both parties had a right to expect, according to law, and upon the evidence in court." The court should set aside the verdict, in justice to themselves as well as the parties, that the trial may be conducted fairly, so that the verdict, when rendered, may be entitled to the respect of both parties, and the confidence of the court. In *Cottle v. Cottle,* 6 Greenl. 140, 19 Am. Dec. 200, the court say, in case of an alleged attempt to influence the jury: "It may be useful for a party to learn that a good cause may be injured, but cannot be promoted, by conduct of this sort; and, to the public generally, to know that it will not be tolerated in any case." (See, also, *Cilley v. Bartlett,* 19 N. H. 324.) The court is unable to say that any deliberate attempt was made to influence the jury in this cause, but it seems improbable that so many things of this kind should have accidentally occurred. In *Knight v. Inhabitants,* 13 Mass. 218, the court say: "We cannot be too strict in guarding trials by jury from improper influence. This strictness is necessary to give due confidence to parties in the results of their causes; and everyone ought to know that for any, even the least, intermeddling with jurors, a verdict will be set aside." (Thompson and Merriam on Juries, 406.) The conduct of the defendants in this cause, as herein stated, has placed it beyond the power of this court to approve of the verdict. The authorities clearly establish the practice that, whenever the adverse party is guilty of conduct calculated to influence a verdict afterward rendered in his favor, a new trial will be granted, as a matter of public policy, and to secure a pure administration of justice. (*Palmer v. Railway Co., supra.*) It is probably unnecessary for this court to say more upon this subject than that the opinions given in the cases cited are fully approved by this court.

The following instruction was requested by the plaintiffs: "A lode, within the meaning of the statute, is whatever the miner could follow, and find ore. Under the requirements of the law, a valid location of a mining claim may be made whenever the prospector has discovered such indications of mineral

that he is willing to spend his time and money in following .with the expectation of finding ore; and a valid location of a mining claim may be made of a ledge deep in the ground, and appearing at the surface, not in the shape of ore, but in vein matter only." The court modified the instruction by changing the word "willing" to "justified." The word "justified" radically changes the whole meaning of the instruction. The question whether the miner is willing to spend his time and money is an entirely different one from the question whether he is justified in doing it. The former is a question to be answered by the miner himself, with or without advice, as he may choose. The latter word would present a question for experts and for the jury to determine. The instruction was correct without modification. (*Harrington v. Chambers,* 3 Utah, 94, 1 Pac. 375, approved in *Eilers v. Boatman,* 111 U. S. 356, 4 Sup. Ct. Rep. 432.)

The following instruction, given by the court, is also excepted to by the plaintiffs, viz.: "If you find that all of these acts necessary to a valid location have been complied with by plaintiffs, and, further, that the location was made prior to the eighteenth day of September, you will find for the plaintiffs," etc. The plaintiffs claim to have made their discovery on the sixteenth day of September, and to have set discovery stake then, followed this up on the seventeenth day of September by partially staking and marking the claim, and on the eighteenth completed the staking and marking boundaries, according to law. If this were proven, then the discovery and location would date from the sixteenth day of September; and any discovery and location made after that date on the same ground, or covering part thereof, could not prevail against plaintiffs. The jury should have been so clearly instructed. The above instruction was calculated to mislead, and the error was not covered by other instructions. Judgment of the court below is reversed, and new trial granted. Costs are awarded to plaintiffs against the defendants, including the costs of the part of the transcript stricken out.

Sullivan, C. J., and Huston, J., concur.