[No. 4414.]

FIELD v. TANNER ET AL. ·

1. **Mining Claims—Possession—Harmless Error.**

In an action to recover possession of a mining claim, a ruling of the court that plaintiff could not establish right of possession based upon occupancy without proof of a valid statutory location, if error, was harmless and waived by plaintiff's producing proof of valid statutory location, if the proof was sufficient to show compliance with the statute.

2. **Mining Claims—Assessment Work—Extension of Time to Enlisted Soldiers.**

Under the act of congress of July 2, 1898, to relieve owners of mining claims who enlisted in the military service for the war with Spain, the filing of notice of such enlistment by the owner of a mining claim was in lieu of and constituted a performance of the annual assessment for that year, and was equivalent to a resumption of work, so as to protect the claim from forfeiture for a failure to perform the assessment work for the preceding year, where no relocation had been made on account of such failure prior to the filing of notice of enlistment.

3. **Same—Burden of Proof.**

Where a relocator of a mining claim attempts to sustain his location on the ground that the former locator, who had enlisted in the military service for the war with Spain, had failed to resume work thereon within six months after being mustered out of service, the burden of proof is upon the relocator to show that the former locator has been mustered out of service for the length of time required to constitute a forfeiture.

4. **Mining Claims — Forfeiture — Relocation—Wrongful Possession.**

Where persons took wrongful possession of a mining claim during the absence of the owner thereof in the military service, and wrongfully held possession and excluded therefrom said owner after his return from such military service, and prevented him from performing the required assessment work thereon, they cannot claim a forfeiture on account of such failure to perform assessment work in support of a relocation of the claim by themselves.

5.  Mining Claims—Tenants in Common—Parties.

The owner of an undivided part of a mining claim may maintain an action for possession of the entire claim against one claiming under a title hostile and antagonistic to plaintiff and his co-owners.

6.  Mining Claims—Forfeiture—Relocation—Re-entry.

Where parties attempted to relocate a mining claim after forfeiture by the failure of the original owner to do his annual assessment work, and the relocators failed to sink their discovery shaft the required depth, and failed to perfect their location within the statutory time, and, after the expiration of the statutory time within which the relocators might have perfected their location, the original owner re-entered and resumed work and did his annual assessment work, his forfeiture was avoided and he was restored to his original rights.

7.  Same—Invalid Location—Amendment.

Where parties attempted to relocate a mining claim on the ground of forfeiture by a failure of the original locator to do his annual assessment work, and their attempted relocation was invalid, after re-entry and resumption of work by the original locator the relocators cannot by amendment cure the defects of their attempted relocation.

*Appeal from the District Court of Teller County.*

Messrs. WOLCOTT, VAILE & WATERMAN and Mr. W. W. FIELD, for appellant.

Mr. SCOTT ASHTON, for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court.

In this action to recover the possession of real property, the controversy is over the right of possession of a plot of mineral land in the Cripple Creek mining district. It lies within the outer boundaries of what appellant (plaintiff below) calls the Great Divide and Last Chance lode mining claims, to which he asserts ownership, and it is substantially the same territory embraced within the Ohio and Last Chance lodes claimed by appellees (defendants below), all of which are unpatented. Upon issues joined by the

pleadings, the trial was to the court without a jury. Findings were in favor of the defendants, and by the judgment the action was dismissed. The facts, so far as material upon this review, are sufficiently stated in the opinion.

1. In his attempt to show his right of possession to this property, plaintiff conceived that a *prima facie* case was made out merely by proving that he and his grantors had done work and made improvements thereon, and that at the time of the intrusion by defendants he was in the occupancy thereof, and that until defendants showed paramount title in themselves, or an antecedent possession, he might rely upon his right of possession thus established, and cites *Armstrong et al. v. Lower et al.,* 6 Colo. 581.

Two kinds of possession of mining property are recognized by the state and federal decisions, as the opinion in that case states; one within which plaintiff first attempted to bring himself, the other resulting from a valid statutory location. When plaintiff closed his evidence which tended to show right of possession based upon occupancy, the court intimated that he had not established any right of possession at all, and could not without proof of valid statutory locations. Acting upon this suggestion, plaintiff then produced proof tending to show, under the federal and state mining laws, valid locations of the two claims to which he asserted ownership; without proof of which, according to the court's ruling, no right of possession could be established under the pleadings.

If there were error in this ruling, as to which we need not decide, the same was harmless and waived by plaintiff's producing proof of valid statutory locations from which the right of possession springs, provided proof of the latter kind was sufficient to show compliance with the statute. In the natural order, then, we proceed first to inquire whether, in the light

óf all the evidence, the locations owned by plaintiff were valid when made, or before the inception of defendants' rights.

2. Plaintiff's locations were made, the Last Chance in the early part of 1893, and the Great Divide in May of that year; the defendants' on January 1, 1899. Defendants contend that plaintiff failed to make sufficient proof as to the validity of his locations, but the only defects to which our attention is called are that the discovery shaft of one of the claims was not sunk to the required depth, and that there was not disclosed therein a well-defined crevice of mineral-bearing rock in place. Were it necessary, it could easily be demonstrated from the evidence that all necessary acts of location were performed by the locators of these two claims at the time they fix as the date of original location. The necessity for doing so, however, is obviated because the proof is clear and unquestioned even by the testimony of defendants' own witnesses, that before the alleged rights of the defendants accrued, a valid discovery in both plaintiff's locations was made, and all other acts of location performed. So that, in our further discussion, we may regard it as satisfactorily proven that plaintiff's locations were valid, and his right of possession established at the time defendants entered to make their locations, unless such right was lost because of some delinquency on the part of plaintiff which forfeited the same.

This brings us to a consideration of the defenses interposed by the defendants, which, if made out, operate at once as a forfeiture of all of plaintiff's rights, and a restoration to the public domain of the land which plaintiff may have theretofore segregated, and upon which they might, and as a matter of fact they say they did, make valid locations, or relocations, under the laws of the United States and of

Colorado, by virtue of which, as they allege, arose their right of possession at the time of institution of the action. These defenses are: *First*, that the plaintiff did not do, or cause to be done, for the years 1897 and 1898, upon either of his claims, the necessary assessment work to the value of one hundred dollars, and thereby the ground which' theretofore was located by plaintiff became again unappropriated public domain of the United States; *second,* that after such failure upon the part of plaintiff to do such assessment work, they entered upon the ground in controversy, and made valid locations, or relocations, thereof; of that portion of the ground theretofore included in the boundaries of the Great Divide claim, under the name of the Ohio lode mining claim, and of the ground included within the plaintiff's Last Chance claim, under the same name; *third,* another defense, though not specifically and affirmatively pleaded, but which, defendants say, arises out of plaintiff's own evidence, is that the plaintiff, at the beginning of the action, was at most the owner of only an undivided, less than an entire, interest in the claims in question, and therefore was not entitled to recover any portion of the same under his allegation of sole ownership. These defenses we shall consider in their order.

3. As to whether the annual assessment work to the value of one hundred dollars on each claim was done for the year 1897, the testimony is conflicting. Beyond all doubt, plaintiff in good faith attempted to comply with the federal statute so requiring. He employed men to do the work, paid them therefor the sum of one hundred dollars for the labor they did on each location, and recorded the affidavit of labor, as section 3161 Mills' Ann. Stats. provides that he may, the recording of which is *prima facie* evidence of the performance of the annual labor

required. These workmen testified that at the regular contract price for similar work in that district, that done on each claim was of the value of one hundred dollars. On the part of defendants there was evidence that such value was less than one hundred dollars. Were it necessary to decide this particular point from the evidence, under the liberal construction of the act in question which the courts have adopted, and remembering that forfeiture for failure to do assessment work must be established by clear and convincing proof, it might be that we should hold that forfeiture upon the ground alleged had not been made out.

In this connection it is appropriate to say, and the observation applies to other branches of the case, that we do not believe that this question of fact was resolved by the lower court in favor of the defendants. There were no specific findings of fact upon any of the issues, the finding being in general terms in favor of defendants. To our minds it is apparent from the rulings of the trial court upon the evidence and other questions that were raised at the trial, that the case was not decided in favor of defendants upon the issues of fact, but upon the court's construction of the following act of congress, passed July 2, 1898, of which only sections 1 and 2 are pertinent:

"An act to relieve owners of mining claims who enlist in the military or naval service of the United States for duty in the war with Spain, from performing assessment work during such term of service:

"That the provisions of section twenty-three hundred and twenty-four, of the Revised Statutes of the United States, which require that on each claim located after the tenth day of May, eighteen hundred and seventy-two, and until patent has been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made dur-

ing each year, shall not apply to claims or parts of claims owned by persons who may enlist in the volunteer army or navy of the United States for service in a war between this country and Spain, so that no mining claim or any part thereof owned by such person, which has been regularly located and recorded, shall be subject to forfeiture for non-performance of the annual assessments until six months after such owner is mustered out of the service, or, if he should not survive the war, then six months after his death in the service.

"Sec. 2. That those desiring to take advantage of this act shall file, or cause to be filed, a notice in the clerk's office where the location certificate of said mine is recorded before the expiration of the assessment year, giving notice of his enlistment and of his desire to hold said claim under this act."—30 U. S. Statutes at Large, 651.

When hostilities between the United States and Spain broke out, plaintiff was a retired surgeon of the navy, and soon after the declaration of war volunteered his services and enlisted as a surgeon in the navy of the United States for service in the war between this country and Spain. Choosing to take advantage of the provisions of the foregoing act, in December, 1898, he caused to be prepared and filed, and recorded in the clerk's office where the location certificates of his mines were recorded, a notice of his enlistment and desire to hold the claims, as therein provided. It is plaintiff's contention that the filing of this notice was the equivalent in all respects of the performance by him of the annual work upon each of the claims for the year 1898, and lifted the forfeiture, if any occurred by reason of his failure to do such work for the year 1897. The defendants hold to the contrary. The question then is, what is the meaning of this act?

Section 2324 of the Revised Statutes of the United States, therein referred to, declares that, for failure to do the annual assessment work upon unpatented lode mining claims, the same become liable to forfeiture and relocation. The section also specifically provides that, if the original owner shall resume work upon such claim after such failure, and before such location by a third person, the rights of the original locator are revived. It will be observed that failure to do the annual assessment work does not, *ipso facto,* work a forfeiture of a lode mining claim, but the same merely becomes liable to forfeiture, which may be complete and final when the rights of third persons accrue. If, however, before such rights do attach, the original locator resumes work, the forfeiture is avoided.—*McGinnis et al. v. Egbert,* 8 Colo. 41; *Belk v. Meagher,* 104 U. S. 279.

It is a fair construction of the act of congress of July 2, 1898, and we so hold, that an enlisted person, being an owner of an unpatented mining claim which has been regularly located and recorded, who files, or causes to be filed, in the proper clerk's office, the notice provided for by section 2, is relieved of the necessity of doing the annual assessment work required by section 2324 of the Revised Statutes, and the filing of such notice is equivalent in all respects to, and is attended with the same consequences that result from, its actual performance. In other words, to apply the principle concretely, since plaintiff, during the year 1898, filed the notice prescribed in section 2, this was in lieu of the assessment work for that year, and in law constituted a resumption and performance, in full, of the assessment work for that year, just as effectually as if plaintiff had actually performed a hundred dollars' worth of work upon each claim. It follows, therefore, that if plaintiff did fail to do his annual assessment work for the year 1897, the claims

were, nevertheless, not liable to forfeiture for such failure, because the filing of this notice was the equivalent of resumption and full performance of the annual assessment work for the year 1898, which, in law, saved to plaintiff all the rights he ever had in the locations, and avoided the forfeiture which, in the absence of resuming work, might have resulted.

It clearly appears from the record that defendants did not attempt to locate this ground on the first day of January, 1898, at which time they say plaintiff's claims were liable to forfeiture, nor did they enter thereupon, or attempt to secure any right thereto, prior to the passage of the act of congress of July 2, 1898, and not until the first day of January, 1899. On that day, however, the ground was not, for the reason just stated, open to relocation, and unless by some subsequent default of plaintiff it became so, he still owns it.

4. That such default occurred is another contention of defendants. Their counsel argue that since plaintiff admits that he returned from the war about the first day of March, 1899, and, as he also concedes, did not, within the period of six months thereafter, as limited by section 1 of the act of 1898, resume labor and perform the same upon either of these claims, his right of possession is lost. While it is true that plaintiff returned to Colorado in the month of March or April, 1899, there is no evidence to which our attention is called that he has ever been mustered out of the service. A sufficient reply to this contention might be that, so far as the record shows, plaintiff is still a surgeon in the United States navy, though the war has long since ended; and as the burden of proof is upon defendants to establish a forfeiture upon the ground alleged, they have failed, if plaintiff is still in the service. But assuming, as we well may, that plaintiff was mustered out in March or

April, 1899, let us see if his rights to these locations are gone by reason of his not having actually done the annual assessment work for the year 1899. Section 1 of the act speaks of annual assessments from the performance of which the enlisted owner of mining claims is exempt. Possibly by a liberal construction of the act, under the facts of this case, plaintiff is exempt from the performance, not only of annual labor for the year 1898, but also for 1899. But it is not necessary so to hold here, for upon another ground the contention of defendants is untenable. The record discloses that plaintiff was not aware of any attempt by others to locate this property for an alleged failure by him to do assessment work, until some time in the month of August, 1899, when in the course of a correspondence with Tanner, one of the defendants, Tanner wrote to him that he and some of his codefendants claimed that they had relocated the claims on the first of January, 1899, because, as they then said, of the failure of plaintiff to do the assessment work for the year 1898. After they were advised of the passage of the act of congress of July 2, 1898, and learning that plaintiff was not delinquent for failure to do the actual annual assessment work for that year, they shifted ground and asserted that such failure related to 1897. But whether defendants made their locations because of the alleged failure of plaintiff to do the work for the year 1897, or the year 1898, we have already decided that the ground was not open to relocation on the first day of January, 1899, which they fixed as the date of their locations.

They were in actual possession of these claims in August, 1899, when plaintiff began to take steps to do the annual assessment for that year, which was within the six months from the time it was alleged he was mustered out of service. In good faith he

attempted to do, or have done, this assessment work, when he discovered that his property was in possession of defendants, who held under a claim hostile and adverse to him, and was informed that they themselves had done, or would do, such work, and that if he did the same it would not inure to his benefit.  Later in the year he went upon the ground itself and endeavored to effect some arrangement with defendants which would obviate the necessity of legal proceedings, but to no purpose, and was then given to understand, and we think it clearly so appears from the record, that he could not with safety to himself, or peaceably, make entry upon the claims for the purpose of doing the assessment work, though it was said by one of the defendants at the trial that they would not have interfered with him had he entered upon the property with that object in view.  However that may be, it does not lie with defendants, who were holding this property wrongfully and adversely to him, to say that he did not do the assessment work for the year 1899, when it is clear from the record that they themselves, by their own wrongful acts, prevented him at a seasonable time from making compliance with the provisions of the statute.  They will not thus be allowed to take advantage of their own fraudulent and wrongful conduct.  Plaintiff's failure, therefore, under the facts of this case, cannot be utilized by the defendants, and they gain nothing by the alleged failure.

5.  Another position taken by defendants is that, assuming the validity of plaintiff's locations when made, and their superiority to the locations of defendants, still he cannot recover in this action because, at most, he is the owner of an undivided interest in each of the claims of which, in his complaint, he asserts sole ownership.  That plaintiff, when the action was begun, was the owner of an undivided, less than an

entire, interest in the two claims is clear beyond all cavil. He asserts ownership of the remaining interests as the result of forfeiture proceedings which he conducted under the federal statute, which provides that the interests of a co-owner of a mining claim who refuses or neglects to contribute his share of annual assessment work may be forfeited to an owner who does the work. To evidence produced by plaintiff tending to show such title, defendants made objections, which appear to have been sustained, relating to irregularities and defects in the proceedings so conducted by plaintiff. It is not essential to pass upon these rulings of the court, but it is appropriate to say that this court has held in *Becker v. Pugh et al.,* 17 Colo. 243, that a stranger to the title of the co-owners, whose rights are thus sought to be terminated, cannot object to irregularities in the proceedings. And in *Elder et al. v. Horseshoe Min. Co.,* 87 N. W. 586, the supreme court of South Dakota decided that a publication of the notice of forfeiture under this same federal statute, such as defendants here say was not sufficient, was in full compliance with the law.

But if these forfeiture proceedings were insufficient to divest the interests of plaintiff's co-owners and invest him therewith, as the unquestioned owner of an undivided interest in each of these claims, he was entitled, as a tenant in common, to recover as against a stranger the entire interest; and if the defendants deraign title from plaintiff's original co-owners, he still would be entitled to recover as against them the interest which it is shown he had in these claims at the time this action was begun. But as the defendants are not tenants in common with plaintiff, but claim under a title hostile and antagonistic to him and that of his original co-owners, they are strangers to his, and their, title. The rule in this

jurisdiction is that in an action to recover real property, one tenant in common may recover possession of the entire tract as against all persons except his cotenants.—*Weese et al. v. Barker et al.*, 7 Colo. 178; Newell on Ejectment, ch. 3, § 35, p. 83; *Erhardt v. Boara*, 113 U. S. 527, 537; 10 Enc. Law (2 ed.) 512.

6. From the foregoing it follows that the mining locations attempted to be relocated by the defendants on January 1, 1899, were not then subject to location because they were not a part of the unappropriated public domain. The ground was then included within previously located and existing valid lode locations, and, so far as the record discloses, up to this point nothing has since occurred to work a forfeiture of plaintiff's rights therein. But if this ground in controversy was, at the time defendants attempted to locate it, unappropriated public domain, they did not make what the law considers a valid location of either claim. While there is testimony by one of the locators that the discovery shaft of each claim was sunk to the required depth, the best evidence, that of defendants' own engineer, whose testimony was given at their instance, clearly showed that neither of defendants' location shafts was sunk to the depth required by law, and, so far as the evidence shows, this defect was not remedied by them before the plaintiff resumed work, and did the assessment work for the year 1900 (which it is admitted he did), and the statutory time for the doing of the various acts of location by defendants had long expired before such re-entry by plaintiff.

7. After the expiration of the six months limited by the act of 1898, for the resumption of work by an enlisted person, and some time in November, 1900, defendants filed amended location certificates of their claims, the effect of which was, they say, to confirm their title, even though their original loca-

tions were defective. Since these amended location certificates are expressly predicated and based upon the original locations of January, 1899, and were made for the express purpose of correcting errors in the original location certificates, we are unable to see how defendants' title has been in the slightest degree helped thereby. As against plaintiff they did not cure any defects which existed at the time defendants' original locations were made, and if the locations of the two claims by defendants were invalid when made, as we have held that they were, the filing of amended location certificates, as against plaintiff, did not validate them.

We are not called upon to construe section 3 of the act of 1898, which points out the procedure by which a relocation may be made of the interests of the co-owners of an enlisted person when such co-owners have failed to do the necessary assessment work. The defendants have made no attempt to comply therewith. They rely upon the proposition that the entire ground in controversy was open to relocation at the time they made their entry, and so base their rights upon the proposition that the entire interest in plaintiff's locations was forfeited and the ground covered thereby relocated by them, as provided by our state statute.

Many other questions are argued by counsel on both sides, but they are either unimportant or disposed of by the foregoing discussion. As already intimated, we are not embarrassed by any specific findings of the trial court upon the material and vital questions of fact. It is so apparent that the decision was based upon an erroneous construction of the act of congress of 1898, which governs the rights of the parties to this controversy, that we may rightfully assume that, if the court had not considered its wrongful construction of that act controlling, the

facts would have been decided in favor of the plaintiff. But, however that may be, it is so clear to us that both the facts and the law are with the plaintiff, that we have no hesitation in reaching the conclusion that he is entitled to recover possession of the entire territory in conflict. After a careful consideration of the record, we are satisfied that the case should not be remanded for a new trial, but that the judgment should be directed by this court. The judgment of the trial court is, therefore, reversed, and the cause remanded to the district court, with instructions to vacate the judgment in favor of the defendants heretofore entered, and to enter a judgment as of the date of the former one in favor of the plaintiff adjudging him to be entitled to the possession of the entire property in controversy.          *Reversed.*