408 P.2d 170

BUNKER CHANCE MINING COMPANY, an Idaho Corporation, Plaintiff-Respondent,

v.

Harry L. BEX, a single man, Caledonia Silver-Lead Mining Company, an Idaho Corporation, United Mines, Inc., an Idaho Corporation, and Yreka United, Inc., an Idaho Corporation, Defendants-Appellants.

No. 9673.

Supreme Court of Idaho.

Nov. 22, 1965.

48

Eugene F. McCann, Wallace, James P. Keane, Kellogg, for appellants.

Thomas A. Mitchell, Coeur d'Alene, for respondent.

50

TAYLOR, Justice.

Prior to 1945, the plaintiff (respondent) was the owner of Moltki, Idaho, Wardner (1914), Speredon, Lovchen, Smolnik, and Smolnik Fraction, unpatented lode mining claims located in the Yreka mining district in Shoshone county. The foregoing group of claims is hereinafter referred to as plaintiff's claims.

In April, 1946, one Harry L. Bex located a group of claims covering the same land embraced in plaintiff's claims. The Bex claims are hereinafter referred to as the Wardner group. One Mike Savage also located a group of claims in April, 1946, covering all of the land in plaintiff's claims outside the townsite of Wardner. The Savage claims are hereinafter referred to as the Grove Silver group. The Wardner group and the Grove Silver group were subsequently conveyed to defendants Yreka United, Inc., and Caledonia Silver-Lead Mining Company, respectively.

Plaintiff claims the property as successor to the original locators. Defendants (appellants) claim the property as successors to the locations made by Bex and Savage as relocators.

After trial the court made findings of fact as follows:

"Plaintiff and its predecessors regularly located and filed the location notices of all the claims involved, to-wit: Moltki, Idaho, Wardner (1914), Speredon, Lovchen, Smolnik and Smilnik

Fraction, and Castle-Rock between the years 1905 and 1914.

"Plaintiff failed to perform the assessment work on these claims for the 1944–1945 year ending July 1, 1945. No affidavit of assessment work was filed within 60 days, and no notice of intention to hold was filed within the same period."

"The Wardner and Wardner 1–9 claims were located by defendant Bex in March and April, 1946, all having been completed by April 22nd, 1946, and were regularly filed on April 26, 1946. These claims overlap the Moltki, Idaho, Wardner (1914), Speredon, Lovchen, Smolnik and Smolnik Fraction claims.

"On April 24, 1946, Notice of Intention to Hold was filed for record by plaintiff, omitting the Smolnik and Smolnik Fraction claims. On April 27, 1946, an amended Notice of Intention was filed for record, correcting spellings of names, and including the Smolnik and Smolnik Fraction.

"The Grove Silver Claims, No. 1 through 7, were located by Savage on April 25, 1946, but not recorded until May 9, 1946. They covered all plaintiff's claims outside the Townsite of Wardner.

"That Bex, who located Wardner and Wardner 1 through 9, admitted that he did not make a discovery of a lode, lead or vein when he did the work.

"The evidence of defendant was insufficient to show that plaintiff's original locations were invalid because of purported conflicts with various patented claims."

The court concluded that the ground covered by plaintiff's claims became open to relocation on July 1, 1945; that the filing of the notice of intention to hold on April 24, 1946, though filed late, was equivalent to a resumption of work and that the ground covered by the claims named in such notice became closed to relocation on the date of the filing of such notice; that the ground covered by Smolnik and Smolnik Fraction claims was closed to relocation by the filing of the amended notice of intention to hold on April 27, 1946; that no valid discoveries were made on the Wardner group of claims and that such claims were void; that the filing by plaintiff of its notice of intention to hold, prior to the recording of the notices of location of the Wardner and Grove Silver claims, nullified the attempted relocations of those claims.

Defendants appealed from the judgment of the trial court quieting plaintiff's title.

Defendants assign as error the finding of the trial court that no valid discoveries were made on the Wardner claims. Mr. Bex, who did the discovery work, testified

that he did not find a lode, lead or vein in any of the cuts he made in locating the Wardner claims. His son Louis Bex, who assisted his father in the work, testified that he deepened existing discovery cuts— the same cuts upon which plaintiff relied for its title. One Ralph Neyman, a mining engineer, testified that in his opinion the possibility of finding sufficient ore for production at the surface on the ground in question, would be remote. In support of their claims defendants point out that the claims lie between the Bunker Hill mine and the Sunshine mine, both of which have developed valuable ore bodies at great depths. They also call attention to testimony that valuable minerals have been found at depth upon land in the district where surface indications showed only slight traces of mineralization, and that no production ore will be discovered in this area except at depth, and that it is quite likely that such ore will be found at depth on the land involved. They quote the rule, upon which they rely, from Castle v. Womble, 19 L.D. 455 (1894), as follows:

" 'Where minerals have been found and the evidence is of such character that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine, the requirements of the statute have been met.' "

Defendants also cite Ambergris Mining Co. v. Day, 12 Idaho 108, 85 P. 109 (1906); Burke v. McDonald, 2 Idaho 679, 33 P. 49 (1890); Kramer v. Gladding, McBean & Co., 30 Cal.App.2d 98, 85 P.2d 552 (1938); and U. S. v. Merger Mines Corp., Department of the Interior, Contest No. 997, Coeur d'Alene 013942, S.F. 48915 (1954).

The governing statute provides that "no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located." R.S. § 2320 (1872) 30 U.S.C. § 23

In Burke v. McDonald, supra, in discussing the requirements for a valid lode discovery, this court said it is not,

"required that well-defined walls shall be developed, or paying ore found within them. But something must be found in place, as rock, clay, or earth, so colored, stained, changed, and decomposed by the mineral elements as to mark and distinguish it from the inclosing country." 2 Idaho at 682, 33 P. at 50.

In a later decision in the same case, 3 Idaho 296, 29 P. 98 (1892), the court held:

"a valid location of a mining claim may be made whenever the prospector has discovered such indications of mineral that he is willing to spend his time and money in following with the expecta-

tion of finding ore; and a valid location of a mining claim may be made of a ledge deep in the ground, and appearing at the surface, not in the shape of ore, but in vein matter only." 3 Idaho at 304, 305, 29 P. at 101.

In Ambergris Mining Co. v. Day, supra, the court held that:

"Evidence of the indications miners had successfully followed in the same district and on contiguous ground in attempting to find a lode or mineral deposit is admissible in determining as to whether or not a valid mineral discovery has been made by one who attempted to locate a lode claim on similar indications and showing upon adjacent ground." 12 Idaho 108, syllabus No. 1, 85 P. 109.

The court, however, did not determine whether a valid discovery had been made upon the claim in question in that case. It refrained from discussing that issue for the reason that admissible evidence which the locator proposed to develop and submit had been rejected by the court. The case was remanded for a new trial. In discussing the second Burke decision, Justice Sullivan, in a concurring opinion, said:

"This court in Burke v. McDonald, 3 Idaho, 296, 29 Pac. 98, did not say, nor intend to convey the idea, that a valid mining claim could be made upon alluvial soil not containing a vein or lode, or upon loose slide rock or debris on the mountainside, simply because the locator was 'willing' to spend his time and money in prospecting it with the expectation of finding a lode, or vein of mineral-bearing rock." 12 Idaho at 121, 85 P. at 114.

The decision of the director of the Bureau of Land Management, in the contest brought by the United States against Merger Mines Corporation, supra, was that the showing as to discovery upon land lying in the vicinity of and adjacent to lands upon which valuable mines had been developed, without the exposure at the surface of a *profitable* vein, was sufficient. The director did not say that a valid discovery could be made without the discovery of a mineral-bearing vein. The decision was to the effect that the showing including surface indications and proximity to valuable mineral deposits justified the further expenditure of time, money and labor in further development with a reasonable prospect of developing a valuable mine at depth. On that basis the director accepted the showing as to discovery and discontinued the contest.

In Kramer v. Gladding, McBean & Co., supra, the California court quoted the rule, applicable here, from an earlier Federal decision as follows:

" 'When the locator finds rock in place containing mineral, he has made a dis-

covery, within the meaning of the statute, whether the rock or earth is rich or poor, whether it assays high or low. It is the finding of the mineral in the rock in place, as distinguished from float rock, that constitutes the discovery, and warrants the prospector in making a location of a mining claim.' " 85 P.2d at 555.

Similar views were expressed by the courts in Rummell v. Bailey, 7 Utah 2d 137, 320 P.2d 653 (1958), and in Adams v. Benedict, 64 N.M. 234, 327 P.2d 308 (1958), both dealing with the discovery of uranium ore.

Veale v. Piercy, 206 Cal.App.2d 557, 24 Cal.Rptr. 91 (1962), involved a contest between a lode claimant and a placer claimant. The court posed the question as follows:

"It is a question of fact whether the mineral deposit in the area covered by the claims lies in a lode or vein formation, or whether it s a conglomarate diffused mass which could qualify only under the provisions of the statute covering placer mines." 24 Cal.Rptr. at 96.

and stated the requirement for a lode location as follows:

"A locator is required to find rock in place in a defined vein or lode containing sufficient valuable minerals to justify a person of ordinary prudence in continuing exploitation and development work." 206 Cal.App.2d 557, 24 Cal.Rptr. at 96.

Titanium Actynite Industries v. McLennan (10th Cir.) 272 F.2d 667 (1960), also involved a contest between lode claimants and placer claimants. The ore body involved was a mass of "black iron" lying on or near the surface, with no definable walls or boundaries and covering an area of eight to twelve square miles. The court held that a lode or vien was not established and said:

"It is often said that the mineral-bearing rock, to constitute a lode, must be fixed in the enclosing mass of the surrounding country * * * it must have fairly well-defined boundaries separating it from the country rock." 272 F.2d at 670.

See also, Cole v. Ralph, 252 U.S. 286, 40 S.Ct. 321, 64 L.Ed. 567; McMullin v. Magnuson, 102 Colo. 230, 78 P.2d 964 (1938); Globe Mining Company v. Anderson, 78 Wyo. 17, 318 P.2d 373 (1957); SANDSTROM, The Discovery Requirement in Mining Law, Can It Be Satisfied by Geophysical Data? (From Vol. 40, No. 4, Denver Law Center Journal, Copyright 1963) Vol. 1, No. 2, Rocky Mountain Mineral L.Rev. 103 (Spring 1964); Western Standard Uranium Co. v. Thurston (Wyo.) 355 P.2d 377 (1960); WALENTA, Re-

cent Mining Legislation and Its Effect on the Law of Discovery, Vol. 2, No. 1, Idaho L.Rev. 9 (Fall 1965).

In further describing his purported discovery work on one of the claims, Mr. Bex testified that he had dug a wedge-shaped piece out of the side of the hill. Asked how far he had dug into the hill, he answered, "Not very far, it was all gravel, and just shovelled it out." This, together with his testimony that he did not find a lode, lead or vein on any of the claims, indicates that he did not discover mineral-bearing rock in place.

The evidence supports the court's finding that no valid discovery was made on any of the Wardner claims.

We refer now to the testimony of Louis Bex that he and his father deepened or extended discovery cuts upon which plaintiff's claims were based. We agree with defendants that a relocator may adopt the discovery of a prior locator and base a valid claim thereon. However, the relocator at the time of making his location must know that there has been a discovery of a mineral-bearing vein in place; otherwise he could not in good faith make a relocation based thereon. If he does not have personal knowledge of the prior discovery he must observe the mineral-bearing vein in place. If the original discovery has been covered by erosion or otherwise and is not open to such observa-

tion, he must uncover it to make a valid relocation. Allen v. Laudahn, 59 Idaho 207, 81 P.2d 734 (1938); Norris v. United Mineral Products Co., 61 Wyo. 386, 158 P.2d 679 (1945); Kramer v. Gladding, McBean & Co., 30 Cal.App.2d 98, 85 P.2d 552 (1938); Pitcher v. Jones, 71 Utah 453, 267 P. 184 (1928); Hagan v. Dutton, 20 Ariz. 476, 181 P. 578 (1919); Hayes v. Lavagnino, 17 Utah 185, 53 P. 1029 (1898).

The original discoveries upon which plaintiff relies were made between 1905 and 1914. It is not contended that Bex had any personal knowledge of such discoveries, and his testimony was that he did not gain any knowledge thereof from the work he did in the old discovery cuts.

Defendants do not challenge the original discoveries, and since they rely on them they are in no position to do so. The recorded location notices of plaintiff's claims are prima facie evidence of the validity of such claims. Bismark Min. Co. v. North Sunbeam Co., 14 Idaho 516, 95 P. 14 (1908); Flynn Group Mining Co., v. Murphy, 18 Idaho 266, 109 P. 851, 138 Am.St.Rep. 201 (1910).

The Grove Silver claims were located by Savage April 25, 1946, one day after plaintiff's notice of intention to hold was filed. The court correctly held that the filing of the notice was equivalent to resumption of work, and had the effect of closing the land, covered by the claims

named in the notice, to relocation. Nesbitt v. De Lamar's Nev. Gold Min. Co., 24 Nev. 273, 52 P. 609, 53 P. 178 (1898); Field v. Tanner, 32 Colo. 278, 75 P. 916 (1904); Pine Grove Nevada Gold Mining Co. v. Freeman, 63 Nev. 357, 171 P.2d 366 (1946).

In the Nesbitt case the Nevada Supreme Court said:

"Evidently, it was the intention of congress, in passing the special acts of 1893 and 1894, suspending the requirements of section 2324 of the Revised Statutes as to the annual labor on mining claims, that the recording of the prescribed notice should have the same legal effect as performing the labor." 52 P. at 610.

The Supreme Court of Colorado came to the same conclusion in Field v. Tanner, supra, in applying an 1898 moratorium statute:

"In other words, to apply the principle concretely, since plaintiff during the year 1898 filed the notice prescribed in section 2, this was in lieu of the assessment work for that year, and in law constituted a resumption and performance in full of the assessment work for that year, just as effectually as if plaintiff had actually performed $100 worth of work upon each claim. It follows, therefore, that, if plaintiff did fail to do his annual assessment work for the year 1897, the claims were, nevertheless, not liable to forfeiture for such failure, because the filing of this notice was the equivalent of resumption and full performance of the annual assessment work for the year 1898, which, in law, saved to plaintiff all the rights he ever had in the locations, and avoided the forfeiture which, in the absence of resuming work, might have resulted." 75 P. at 919.

In Pine Grove Nevada Gold Mining Co. v. Freeman, supra, the Nevada court followed the Nesbitt and Field cases in applying the moratorium statute which is before us in this case, 57 Stat. 74 (1943), 30 U.S.C. § 28a. There the notice of intention to hold was filed late as in this case. The court there said·

"From the foregoing authorities, it is clear that the unpatented mining claims of plaintiff involved in this action were open to relocation from 12 o'clock meridian July 1, 1944, to the time of the filing of said Notice of Suspension of Labor and Intention to Hold which had the effect of, and was equivalent to, a resumption of work, on December 14, 1944." 171 P.2d at 379.

Defendants rely on Carrey v. Secesh Dredging etc., Co., Inc., 55 Idaho 136, 39 P.2d 772 (1934). In that case it was held that the resolution of Congress suspending the requirement of annual assessment work

was not construable as a resumption of actual work so as to revive original locator's placer claims on which such locators had performed no work for two years. There are two important distinctions between the Carrey case and the one at bar. The resolution of Congress involved in the Carrey case suspended the requirement for annual labor, automatically. It did not require the filing of a notice of intention to hold. Hence, there was no act required on the part of the locator which could be equated with resumption of work. Justice Holden in the Carrey case called attention to the difference between the act of Congress involved in Field v. Tanner, supra, and the resolution of Congress before the court in the Carrey case. It was also pointed out in the Carrey case that the ground had been relocated prior to the effective date of the Congressional resolution. Therefore, the statement in the Carrey case, to the effect that the suspension of the requirement of assessment work did not have the effect of resumption of work, was dictum.

 The plaintiff's notice of intention to hold, filed April 24, 1946, did not name nor include the Smolnik and Smolnik Fraction claims. It was not until the amended notice of intention to hold was filed on April 27, 1946, that those claims were named; hence, at the time of Savage's locations, the land covered by those claims was open to relocation. If Savage made valid discoveries on the claims he purported to have located on that land, and complied with the other requirements of law for the making of valid locations, any right or title he thus acquired was not cut off by the subsequent filing of the amended notice of intention to hold. The statute requiring the filing for record of copies of notices of location, I.C. § 47–604, gave Savage 90 days after the locations were made, to make such filing. The fact that he did not record copies of his notices of location until May 9, 1946, did not defeat any right or title he may have acquired prior to the filing of plaintiff's amended notice of intention to hold. Last Chance Mining Co. v. Bunker Hill & S. Mining & C. Co. (9th Cir.) 131 F. 579 (1904); Atherley v. Bullion Monarch Uranium Co., 8 Utah 2d 362, 335 P. 2d 71 (1959); Frazier v. Consolidated Tungsten Mines, 80 Ariz. 261, 296 P.2d 447 (1956).

Because of the trial court's ruling that the filing of the amended notice of intention to hold on April 27, 1946, closed the land covered by Smolnik and Smolnik Fraction to relocation by Savage, the court did not determine whether Savage had made valid discoveries and otherwise complied with the law in making his locations on the land covered by those claims.

The judgment of the court quieting plaintiff's title in and to the Moltki, Idaho,

**58**

·Wardner (1914), Speredon, and Lovchen claims is affirmed.

The judgment quieting plaintiff's title in and to Smolnik and Smolnik Fraction is reversed, and the cause is remanded with directions to the district court to reopen the case and to determine the validity of the Savage locations on the land covered by Smolnik and Smolnik Fraction claims, and to enter its judgment accordingly.

No costs allowed.

McQUADE, C. J., McFADDEN and SMITH, JJ., and FELTON, D. J., concur.