(February 27, 1906.)

# AMBERGRIS MINING COMPANY, Appellant, v. HARRY L. DAY et al., Respondents.

### [85 Pac. 109.]

MINING LAW—ADVERSE SUIT—EVIDENCE OF MINERAL DEPOSIT—COMPARISON WITH CONTIGUOUS CLAIM—EXAMINATION OF CLAIM—PROOF OF MINERAL DISCOVERY.

1. Evidence of the indications miners had successfully followed in the same district and on contiguous ground in attempting to find a lode or mineral deposit is admissible in determining as to whether or not a valid mineral discovery has been made by one who attempted to locate a lode claim on similar indications and showing upon adjacent ground.

2. It is incompatible with the spirit of judicial inquiry to allow a litigant to introduce, for comparison, evidence of indications and conditions found on a particular mining property which led up to a rich ore body over which he has absolute control, and from which he may exclude every other person, unless such litigant permit his adversary to examine and inspect such property for the purpose of introducing rebuttal evidence if he so desires; and where such evidence is admitted and examination of the property is denied the adverse party, a new trial will be granted.

3. As between a prior and subsequent locator of the same ground as a lode claim, the courts will view the evidence tending to establish the senior locator's discovery in the most favorable light such evidence will reasonably justify.

(Syllabus by the court.)

APPEAL from the District Court of the First Judicial District, for Shoshone County. Hon. Ralph T. Morgan, Judge.

Suit by plaintiff in support of an adverse claim to certain mining ground in conflict between the Anna and Ambergris lode claims. Judgment for defendants. Plaintiff moved for a new trial, which motion was denied, whereupon plaintiff appealed from both the judgment and the order. *Reversed, and new trial ordered.*

Albert Allen and John P. Gray, for Appellant.

The ground within the Anna as staked and marked would not be open to location, providing the discovery was sufficient upon which to base a valid location, until the 19th of October, 1901. The discovery of the Ambergris was made on the 4th of October, but as against the Anna would date from the 25th of October, the day when the location notice was posted upon the claim. This is not in contravention of the decision of the supreme court of the United States in *Belk v. Meagher,* 104 U. S. 279, 26 L. ed. 735, but comes within the rule as announced by Judge Moody in *Caledonia Gold Min. Co. v. Noonin,* 3 Dak. 189, 14 N. W. 426.

There was no valid discovery even if respondents' testimony was true. (*Doe v. Waterloo Min. Co.,* 54 Fed. 935, 82 Fed. 45; *Mt. Diablo etc. Min. Co. v. Callison,* 5 Saw. 439, Fed. Cas. No. 9886.)

Evidence as to what sort of indications other miners would follow in attempting to find lode is admissible, not as stating the opinion of third parties, but as stating the value of the indications in the mining community. (*Harrington v. Chambers,* 3 Utah, 94, 1 Pac. 362; *Chambers v. Harrington,* 111 U. S. 350, 28 L. ed. 452, 4 Sup. Ct. Rep. 428.)

A location can only be made upon the actual discovery of the vein or lode. (*King v. Amy etc. Min. Co.,* 152 U. S. 222, 38 L. ed. 419, 14 Sup. Ct. Rep. 510; *Copper Globe Min. Co. v. Allman,* 23 Utah, 410, 64 Pac. 1019; *Nevada Sierra Oil Co. v. Home Oil Co.,* 98 Fed. 671; *Erhardt v. Boaro,* 113 U. S. 527, 28 L. ed. 1113, 5 Sup. Ct. Rep. 560.)

There is a material difference between a discoverer being willing to spend his time and money in exploiting the ground and being justified in doing so. (Lindley on Mines, 2d ed., p. 609; *Burke v. McDonald,* 2 Idaho, 679, 33 Pac. 49.)

Where it is clear from the evidence that no valid location of the plaintiff's claim is made on the ground as found by the trial court, the decree in favor of plaintiff must be

reversed and decree for the defendant ordered. (*Copper Globe Min. Co. v. Allman,* 23 Utah, 410, 64 Pac. 1020.)

M. A. Folsom and W. E. Borah, for Respondents.

The law does not require any particular degree of richness in order to support a quartz claim location. It only requires that there shall be sufficient indications to justify a reasonably prudent person in spending his time and money in its development. (*Muldrick v. Brown,* 37 Or. 185, 61 Pac. 428.)

Under the requirements of the law, a valid location of a mining claim may be made whenever the prospector has discovered such indications of mineral ·that he is willing to spend his time and money in following it with the expectation of finding ore. (*Burke v. McDonald,* 3 Idaho, 296, 29 Pac. 98; *Hays v. Lavagnino,* 17 Utah, 185, 53 Pac. 1029.)

When the locator of a mining claim finds rock in place containing mineral in sufficient quantity to justify him in spending his time and money in prospecting and developing the claim, he has made a discovery within the meaning of the statute, whether the rock or earth is rich or poor or assays high or low, with his qualification: That the definition of a lode must always have such reference to the formation and peculiar characteristics of the ore district in which the lode or vein is found. (*Migeon v. Montana Cent. Ry. Co.,* 77 Fed. 254, 23 C. C. A. 156; *Iron etc. Min. Co. v. M. & S. G. S. M. Co.,* 143 U. S. 394, 36 L. ed. 201, 12 Sup. Ct. Rep. 543; *Book v. Justice Min. Co.,* 58 Fed. 120; *McShane v. Kenkle,* 18 Mont. 208, 56 Am. St. Rep. 578, 44 Pac. 979, 33 L. R. A. 851.)

Where there are found seams or veins of mineral matter which had induced other miners to locate claims in the same district, it would be sufficient to constitute a location. (*Shoshone Min. Co. v. Rutter,* 87 Fed. 801, 31 C. C. A. 223; 1 Lindley on Mines, 2d ed., sec. 336; 1 Snyder on Mines, sec. 345; *Iron S. M. Co. v. Cheesman,* 116 U. S. 529, 29 L. ed. 712,

*Hyman v. Wheeler,* 29 Fed. 347; *Jupiter v. Bodie etc. Min. Co.,* 11 Fed. 666, 7 Saw. 96; *Doe v. Waterloo Min. Co.,* 54 Fed. 935; *O'Donnell v. Glenn,* 8 Mont. 248, 19 Pac. 302.)

A relocator cannot avail himself of the mineral in the public lands which another has discovered until the former discoverer has in fact abandoned the claim or under the law has forfeited his right thereto. (*Book v. Justice,* 58 Fed. 128; *Souter v. McGuire,* 78 Cal. 543, 21 Pac. 183; *Erwin v. Perego,* 93 Fed. 612, 35 C. C. A. 482; *Gwilin v. Donellon,* 115 U. S. 49, 29 L. ed. 348, 5 Sup. Ct. Rep. 110, *Quigley v. Gillette,* 101 Cal. 469, 35 Pac. 1040; *Harris v. Kellogg,* 117 Cal. 484, 49 Pac. 708; *Belk v. Meagher,* 104 U. S. 279, 26 L. ed. 735.)

AILSHIE, J.—This suit was instituted by the appellant in support of an adverse claim to that portion of mining ground in conflict between the Anna and Ambergris lode claims. The appellant is the owner of the Ambergris lode and the respondents are the owners of the Anna lode. The respondents base their claim upon a location dated the nineteenth day of August, 1901, on which date Paulson and Hutton, who were two of the owners of the Hercules lode claim, made their location of the Anna claim, and thereafter, on August 31st, caused the same to be duly recorded. On the fourth day of October, 1901, John King, the predecessor in interest of the appellant, made discovery of the Ambergris claim and posted what he terms a preliminary notice, and marked the boundaries of the claim and performed the location work. On October 25th, King posted legal and lawful notice on the Ambergris claim, and on the same date caused the notice to be duly recorded. The Ambergris location overlapped a portion of the Anna claim. The conflict is shown by plaintiff's exhibit "E," which also shows the location of the Anna and Ambergris with relation to the Hercules, concerning which considerable evidence was introduced and about which there is much controversy in this case. For convenience in reference, exhibit "E" will be included herein, and is as follows:

Respondents applied for a patent to the Anna, and the appellant thereupon, within the statutory time, filed an adverse claim and commenced this suit in support thereof. The appellant bases its claim to the right of possession of the ground in conflict upon the grounds; "1. Because of the fact that the Anna is not based upon any valid discovery of the ledge, lode or vein of mineral-bearing rock in place; 2. Because the respondents did not within sixty days from the date of their location perform the location work required by law." The cause was tried by the court and findings of fact and conclusions of law were made and filed, and judgment was thereupon entered in favor of the defendants. Plain-

tiff moved for a new trial, which motion was denied, and thereupon appealed from the judgment and order denying its motion for a new trial. After the plaintiff had introduced its evidence and rested its case, the defendant, August Paulson, was sworn and examined on behalf of the defense, and testified to his acquaintance and familiarity with the Hercules and Fire Fly claims, which are adjoining claims. He was thereupon asked the following question: "What did you find in those claims at that time on the Fire Fly?" To this question counsel for the plaintiff objected on the ground of incompetency and that evidence of the nature, condition and character of the Hercules vein was wholly immaterial, and on the further ground that the plaintiff had not been permitted to examine the Hercules property. The objection was overruled by the court, and the witness thereupon narrated the conditions which led up to the discovery of the Hercules vein and the character of the gangue and vein matter and ore body therein, and the fact that he found soft white porphyry carrying mineral traces and mixed with the ore body. The witness described the same kind of ore, vein and gangue matter in the Fire Fly and then testified to finding similar surface conditions at the Anna claim. He also testified that, judging from the character of rock and the formation and traces of ore as found on the Hercules at the time of its discovery, and the fact that those indications and traces led to the development of a rich and paying mine in the Hercules, a miner, familiar with those facts and the peculiar formation in that particular locality, would be justified in locating another claim in the same vicinity based upon similar rock and like mineral traces, and outcroppings and formation. Several other witnesses testified on behalf of the defendants, over the objection of plaintiff, to the same effect and like conditions and circumstances as that testified to by Paulson. After the defendants had introduced all their evidence and rested their case, counsel for plaintiff moved the court for an order permitting plaintiffs' witnesses to examine and inspect the Hercules mine, and that for such purpose the court might continue the further hearing of the case

until such time as the plaintiff could have an examination made in order to be able to meet and rebut the evidence produced by the defendants in reference to the Hercules vein and the character of the rock, ore and gangue matter found therein. The court denied this motion and the plaintiff again excepted. The rulings of the court in admitting the evidence concerning the Hercules mine, comparing the formation therein with the Anna, and. in refusing to grant plaintiff an order for examination and inspection of the Hercules and refusing a continuance for that purpose, are assigned as error on this appeal.

Our consideration of the objection to the class of evidence admitted on behalf of the defendants has forced us to the conclusion that such evidence is admissible and competent in this class of cases. If a miner has discovered certain mineral indications which he has followed up with the result that a rich and valuable ore body has been developed therefrom, it seems clear that another miner finding similar indications and conditions on contiguous ground or in the immediate vicinity would be in a measure justified in following up those evidences with a reasonable expectation of finding mineral deposits. And this is true even though the indications, rock and deposits found are such as the expert, scientist, geologist and mineralogist in their finest theories tell him are not evidence of mineral deposits, or even that they are evidences of the entire absence of mineral. As a matter of fact, and greatly to their credit, those scholars who have added so largely to the store of knowledge have been observant and progressive enough to, from time to time, revise and modify their views and theories to keep apace with the actual demonstrations of the man who risks his judgment (though ofttimes a hazard) and delves into the earth at uninviting and unseemly places. The miner, as well as the man engaged in any other occupation or business. is entitled to act on experience and observations, and while he may not, and indeed will not, always attain the same results, the exception to the rule does not preclude him from availing himself of his own observations and those of his fellows as

well as demonstrated existing conditions. We are not, however, without the aid of judicial expression on this question. In *Shoshone Min. Co. v. Rutter,* 87 Fed. 807, 31 C. C. A. 223, Judge Hawley speaking for the court of appeals for the ninth circuit, said: "The seams, containing mineral-bearing earth and rock, which were discovered before the location was made, were similar in their character to the seams or veins of mineral matter that had induced other miners to locate claims in the same district, which by continued developments thereon had resulted in establishing the fact that the seams, as depth was obtained thereon, were found to be a part of a well-defined lode or vein containing ore of great value. The discovery made at the time of the Kirby location was therefore such as to justify a belief as to the existence of such a lode or vein within the limits of the ground located. (*Erhardt v. Boaro,* 113 U. S. 528, 536, 28 L. ed. 1113, 5 Sup. Ct. Rep. 560.) The subsequent developments made after the claim was located, and before the location of the Shoshone, show more clearly the existence of a lode or vein."

In *Harrington v. Chambers,* 3 Utah, 94, 1 Pac. 362. the syllabus says: "Evidence as to what sort of indications other miners would follow in attempting to find a lode is admissible, not as stating the opinions of third parties, but as stating the value of the indications in the mining community. A lode is whatever the miners could follow and find ore." This holding by the supreme court of Utah was affirmed by the United States supreme court in *Chambers v. Harrington,* 111 U. S. 350, 28 L. ed. 452, 4 Sup. Ct. Rep. 28. This brings us to a consideration of the application made by plaintiff for permission to examine the Hercules for the purpose of enabling its witnesses to testify concerning the natural conditions and formation as found in that mine. It does not seem to us that this phase of the case demands very extensive consideration here. It is so manifestly unjust and incompatible with the spirit of judicial inquiry to allow a litigant to employ, as a standard of comparison and test, a mine over which he has custody and absolute control, and from which he may exclude every other person, without

allowing his adversary an opportunity of having witnesses inspect and examine the property, that it cannot receive the sanction or approval of the courts. If a litigant who offers evidence of this class and character is not willing that his adversary may inspect and examine the property used as a standard of comparison, then his evidence should be excluded. A branch of inquiry worthy of the introduction of evidence on the one side is subject to rebuttal by the other side, and he who opens up such field of inquiry cannot be permitted to preclude the possibility of the adverse party furnishing any contrary evidence on the subject. It should not have been necessary for the plaintiff to apply to the trial court for an order allowing an examination of the Hercules; the defendants in fairness, upon a mere request, should have permitted it. The examination requested by plaintiff should have been allowed, and if denied by the defendants, their evidence concerning the Hercules should have been excluded.

The appellant urges the insufficiency of the evidence produced by the respondents to establish a discovery of mineral-bearing rock in place by the locators of the Anna, and also its insufficiency to show that the location work required by law was ever done on the Anna claim prior to the Ambergris location. As above indicated, this case must be remanded for a new trial, and these questions of fact will have to be again submitted to a jury or the court, and a greater weight or preponderance of evidence on one side or the other may be produced at the next trial, and new and additional facts may be shown. For that reason we will express no opinion as to the weight and sufficiency of the evidence presented in this record.

There appears to be some difference between the respective parties as to the legal principle applicable in this case touching the discovery on the Anna. It should be borne in mind that the strictness with which the courts will inquire into the sufficiency and validity of an alleged mineral discovery depends upon the class of claimants to which the contestants belong. In *Migeon v. Montana Cent. Ry. Co.*, 77 Fed. 254, 23

C. C. A. 156, the United States circuit court of appeals points out this distinction in the following manner: "There are four classes of cases where the courts have been called upon to determine what constitutes a lode or vein within the intent of different sections of the Revised Statutes; (1) between the miners who have located claims on the same lode, under the provisions of section 2320; (2) between placer lode claimants under the provisions of section 2333; (3) between mineral claimants and parties holding townsite patents to the same ground; (4) between mineral and agricultural claimants of the same land. The mining laws of the United States were drafted for the purpose of protecting the *bona fide* locators of mining ground and at the same time make necessary provision as to the rights of agriculturists and claimants of townsite lands. The object of each section, and of the whole policy of the entire statute, should not be overlooked. The particular character of each case necessarily determines the rights of the respective parties, and must be kept constantly in view, in order to enable the court to arrive at a correct conclusion. What is said in one character of cases may or may not be applicable in the other. Whatever variance, if any, may be found in the views expressed in the different decisions touching these questions arises from the difference in the facts and in a difference in the character of the cases, and the advanced knowledge which experience in the trial of the different kinds of cases brings to the court. . . . . The fact is that there is a substantial difference in the object and policy of the law between the cases where the determination of the question as to what constitutes the discovery of a vein or lode between different claimants of the same lode under section 2320, on the one hand, and a 'lode known to exist' within the limits of a placer claim at the time application is made for a patent therefor under section 2333, in the other. . . . .

"The question as to what constitutes a discovery of a vein or lode under the provisions of section 2320 of the Revised Statutes has been decided by many courts. All the authorities cited by appellants are referred to in *Book v. Jus-*

*tice Co.,* 58 Fed. 106, 121. The 'liberal rules therein announced are substantially to the effect that when a locator of a mining claim finds rock in place containing mineral in sufficient quantity to justify him in expending his time and money in prospecting and developing the claim, he has made a discovery within the meaning of the statute, whether the rock or earth is rich or poor, whether it assays high or low, with this qualification: that the definition of a lode must always have special reference to the formation and peculiar characteristics of the particular district in which the lode or vein is found. It was never intended that in such a case the courts should weigh scales to determine the value of the mineral found as between a prior and subsequent locator of a mining claim on the same lode.'' The same court in *Shoshone Min. Co. v. Rutter, supra,* again said: ''The purpose of the statute in requiring that 'no location of a mining claim shall be made until the discovery of a vein or lode within the limits of the claim located,' was to prevent frauds upon the government by persons attempting to acquire patents to land not mineral in its character. But as was said in *Bonner v. Meikle,* 82 Fed. 697: 'It was never intended that the court should weigh scales to determine the value of mineral found as between a prior and subsequent locator of a mining claim, on the same lode.'

''The location of the Kirby was made in 1886. The discovery of mineral then made was sufficient to induce the locators and their grantees to perform the amount of annual labor thereon as required by the mining laws; to expend their time and money in prosecuting the work thereon, in the belief and expectation of finding ore of profitable value therein.''

The following authorities are to the same effect: *Book v. Justice Min. Co.,* 58 Fed. 120; *McShane v. Kenkle,* 18 Mont. 208, 56 Am. St. Rep. 578, 44 Pac. 979, 33 L. R. A. 851; *Muldrick v. Brown,* 37 Or. 185, 61 Pac. 428; *Iron S. M. Co. v. Cheeseman,* 116 U. S. 529, 29 L. ed. 712; 1 Snyder on Mines, sec. 345; *Harrington v. Chambers,* 3 Utah, 94, 1 Pac. 375.

In *Burke v. McDonald*, 3 Idaho, 296, 29 Pac. 98, the plaintiff requested the following instruction: "A lode, within the meaning of the statute, is whatever the miner could follow, and find ore. Under the requirements of the law, a valid location of a mining claim may be made whenever the prospector has discovered such indications of mineral that he is willing to spend his time and money in following with the expectation of finding ore; and a valid location of a mining claim may be made of a ledge deep in the ground, and appearing at the surface, not in the shape of ore, but in vein matter only." The trial court had modified the instruction by changing the word "willing" to "justified." Concerning that change in the instruction, this court, speaking through Mr. Justice Morgan, said: "The word 'justified' radically changes the whole meaning of the instruction. The question whether the miner is willing to spend his time and money is an entirely different one from the question whether he is justified in doing it. The former is a question to be answered by the miner himself, with or without advice, as he may choose. The latter word would present a question for experts, and for the jury to determine. The instruction was correct without modification." In support of the foregoing statement the court cite *Harrington v. Chambers, supra.* Mr. Lindley, in volume 1 (second edition), section 336, of his work on Mines, after stating the principle announced in *Burke v. McDonald*, and citing that case, proceeds as follows: "But it would seem that the question could not be left to the arbitrary will of the locator. Willingness, unless evidenced by actual exploitation, would be a mere mental state which could not be satisfactorily proved. The facts which are within the observation of the discoverer, and which induced him to locate, should be such as would justify a man of ordinary prudence, not necessarily a skilled miner, in the expenditure of his time and money in the development of the property."

Judging from the cases cited by the author in support of the foregoing statement, we infer that he makes that statement as a general principle and without any intention of

its special application to a contest between two miners who have located the same ground as a lode claim. His authorities do not support a stronger position. Again, under our statute, the discovery must be followed by doing the location work within sixty days which in itself is, at least, a partial "exploitation." Where one miner has discovered what he considers mineral indications and deposits, and has followed up that discovery by staking the claim and doing the necessary location work, and another miner comes along and makes a discovery, and locates a part or all of the same ground covered by the former location, and thereupon goes into court to contest the senior location, and in order to sustain that contest shows that the ground does in fact contain valuable mineral deposits as contemplated by section 2320 of the Revised Statutes of the United States, and at the same time contends that the senior locator had not made a mineral discovery, the courts will not examine the evidence of the senior discovery with very great strictness. The case is quite different from a contest between the miner and the agriculturist.

The foregoing views cannot, of course, be carried to the extent of relieving anyone who claims ground under the mineral laws of the United States from a substantial compliance with the United States statutes in the matter of mineral discovery. The observation of Justice Field in *Erhardt v. Boaro*, 113 U. S. 537, 28 L. ed. 1113, 5 Sup. Ct. Rep. 560, is worthy of repetition here. He said: "It would be difficult to lay down any rules by which to distinguish a speculative location from one made in good faith with a purpose to make excavations and ascertain the character of the lode or vein, so as to determine whether it will justify the expenditures required to extract the metal; but a jury from the vicinity of the claim will seldom err in their conclusions on the subject."

Anent the contention that the location work was never done on the Anna, counsel for appellant cite *Lavagnino v. Uhlig,* 198 U. S. 443, 49 L. ed. 1119, 25 Sup. Ct. Rep. 716, while respondents cite on the same point *Belk v. Meagher,*

104 U. S. 279, 26 L. ed. 735.   It is contended by appellant
that this most recent ruling of the United States supreme
court overrules the doctrine as to location of forfeited and
abandoned claims announced in the earlier case.   It has been
generally understood throughout the mining states that *Belk
v. Meagher* had become the settled law to the effect that
no valid relocation can be made on a mining claim until the
rights of the former locator have been finally forfeited or
abandoned, and that a location made after the forfeiture or
abandonment would take precedence over such invalid re-
location; but *Lavagnino v. Uhlig,* decided less than a year
ago, ·appears to have entirely upset that doctrine, and it
will be a matter of great interest to the lawyers and courts,
as well as the miners of these western states, to know just
whether these cases are distinguishable on principle or the
one overrules the other entirely.

For the error above considered, the judgment must be re-
versed, and it is so ordered, and a new trial is granted.
Costs awarded in favor of appellant.

Stockslager, C. J., concurs.

SULLIVAN, J., Concurring.—I concur in the conclusion
reached and fully indorse what is said by Mr. Lindley in
volume 1 (second edition), section 336.   This court in *Burke
v. McDonald,* 3 Idaho, 296, 29 Pac. 98, did not say, nor in-
tend to convey the idea, that a valid mining claim could be
made upon alluvial soil not containing a vein or lode, or upon
loose slide rock or debris on the mountainside, simply because
the locator was "willing" to spend his time and money in
prospecting it with the expectation of finding a lode ·or vein
of mineral-bearing rock.   In that case the court said: "And
a valid location of a mining claim may be made of a ledge
deep in the ground, and appearing at the surface, not in the
shape of ore, but in vein matter only."   The terms "vein"
and "lode" have been so often defined by the courts of the
United States, that it is unnecessary for me to cite many

authorities as to the well-known, established and accepted meaning of those terms. Many of the decisions defining those terms are collected in volume 5 of Words and Phrases Judicially Defined, under the word "lode," page 4423. Justice Field in the case of *Eureka Consolidated Min. Co. v. Richmond Min. Co.*, 4 Saw. 302, Fed. Cas. No. 4548, defines a "lode" to be "a zone or belt of mineralized rock, and lying within boundaries clearly separating it from the neighboring rock." In *Book v. Justice Min. Co.*, 58 Fed. 106, it is said, the word "lode" as used in the United States statutes, and as understood by miners, is applicable to any body or belt of mineralized rock lying within clearly defined boundaries separating it from the country or nonmineral rock. If in a certain district the country rock is limestone, and veins or lodes of mineral are found in such country rock, the Revised Statutes of the United States and of the state of Idaho, in regard to the location of quartz claims, do not contemplate that a valid location can be made upon such limestone without first having discovered some vein or lode within such country rock. It is shown in the record in this case that many of the most important mines of Shoshone county are found in quartzite, that being the country rock of that region, that contains traces of mineral. It is clear to me that simply because veins or lodes of mineral-bearing matter are found within such quartzite or country rock, a valid location cannot be made on the quartzite without first having discovered some vein or lode therein. Section 2320 of the Revised Statutes of the United States clearly contemplates that quartz mining claims can only be located upon veins or lodes of quartz or other rock in place bearing gold, silver, cinnabar or other metals of value. Said section is as follows: "Mining claims upon veins or lodes of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits, heretofore located, shall be governed as to length along the vein or lode by the customs, regulations, and laws in force at the date of their location. A mining claim located after the tenth day of May, 1872, whether located by one or

more persons, may equal, but shall not exceed, fifteen hundred feet in length along the vein or lode; but no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located. No claim shall extend more than three hundred feet on each side of the middle of the vein at the surface, nor shall any claim be limited by any mining regulation to less than twenty-five feet on each side of the middle of the vein at the surface, except where adverse rights existing on the tenth day of May, 1872, render such limitation necessary. The end lines of each claim shall be parallel to each other.''

That section contemplates that the vein or lode must be first discovered before a valid location can be made. It provides, *inter alia,* that no claim shall extend more than three hundred feet on each side of the middle of the vein or lode, and as the law contemplates that boundaries of the claim must be marked upon the ground, how could they be marked upon the ground without having first discovered the vein or lode, in order to ascertain the distance of three hundred feet on each side of the center thereof? Section 3100 of the Revised Statutes of Idaho, as amended by the Laws of 1899, page 367, is as follows: ''Mining claims hereafter located upon veins or lodes of quartz, or other rock in place bearing any of the metals, or other valuable deposits mentioned in section 2320 of the Revised Statutes of the United States, may extend to three hundred feet on each side of the middle of the vein or lode; *provided,* that when the locators have set the stakes, posts or monuments described in the next section, to indicate the line of the vein, ledge or lode, such stakes, posts or monuments must be taken for the purposes of said location, to mark correctly the line thereof, and such line must not be afterward changed so as to affect rights acquired or interfere with any location made subsequent thereto.'' That section provides that the location may extend three hundred feet on each side of the middle of the vein or lode, and it contemplates that the locator shall mark the same with posts or monuments to indicate

the line of the vein, ledge or lode. Section 3101 of the Revised Statutes, as amended, provides that the locator at the time of making the discovery of such vein or lode must erect a monument at such place of discovery, and within three days after making the discovery must mark the boundaries of his claim. The law clearly contemplates that the discovery of a vein or lode must be made before a valid location can be made thereon; simply because the country rock of a certain district is porphyry or granite or limestone or quartzite, and that veins carrying any of the precious metals have been discovered therein, the law does not contemplate that a valid quartz claim location can be made upon such porphyry or other country rock. Had Congress intended that a valid quartz claim location could have been made on any ground where the locator was "willing" to expend his time and money in prospecting for a vein or lode, it certainly would have used different language from that used in section 2320 of the Revised Statutes of the United States. To hold that valid location of a quartz claim may be made upon porphyry or limestone, that being the country rock in which valuable mines have been discovered, would be in direct violation of the provisions of said section. If the prospector discovers "float" on the mountainside, which is covered with loose slide rock and debris or soil, he could not make a valid location thereon until he had discovered a vein or lode "of quartz or other rock in place bearing some valuable deposit," even though he were "willing" to spend his time and money trying to discover a vein or lode. The "discovery" must be made before location can be made.

In *Migeon v. Montana Cent. Ry. Co.,* 77 Fed. 249, 23 C. C. A. 156, Judge Hawley, who has written many of the most important mining decisions on the Pacific slope, referring to the case of *Book v. Justice Min. Co.,* 58 Fed. 106, said: "The liberal rules therein announced are substantially to the effect that when a locator of a mining claim finds rock in place [observe the words "finds rock in

place"; not "hopes" to find rock in place or is willing to try to find rock in place] containing mineral in certain quantity to justify him in expending his time and money in prospecting and developing a claim, he has made a discovery within the meaning of the statute, whether the rock or earth is rich or poor." There the term "rock in place" is used, the identical expression used in section 2320 of the Revised Statutes of the United States, thus clearly holding that something more permanent must be discovered than mere shale, slide rock or debris. Judge Hawley there states, "It was never intended that in such a case the court should weigh scales to determine the value of the mineral found as between a prior and a subsequent locator of a mining claim on the same lode." That, no doubt, is true, but nearly all of the decisions emphasize the fact that a vein or lode of rock in place must first be discovered before a valid location can be made, and clearly indicate that a valid location cannot be made upon a "hope and desire" to discover by future developments.

While in the opinion in this case it is not intended to hold that a valid location could be made upon loose debris or slide rock without first discovering a lode or vein therein, I desire to emphasize my views upon that question as above set forth.