[No. 1689.]

SAMUEL FOX, JAMES ENNIS, CARL SCHMIDT, AND T. L. ODDIE, APPELLANTS, *v.* A. D. MYERS, T. D. MURPHY, HARRY RAMSEY, H. C. HALL, R. C. COOK, W. I. BEAUCHAMP, JOHN DOE, RICHARD ROE, JAMES STYLES, AND MARY STYLES, RESPONDENTS.

1. TRIAL—NONSUIT—DETERMINATION. In considering a motion for nonsuit at the close of plaintiff's case, every fact essential to plaintiff's recovery that his evidence tends to prove and all legal presumptions arising from such evidence must be taken as established.

2. MINES AND MINERALS—LOCATION—DISCOVERY OF MINERAL. When a locator of a mining claim finds rock in place containing minerals in sufficient quantities to justify him in expending his time and money in prospecting and developing his claim he has made a discovery within Rev. Stats. U. S. 2320 (U. S. Comp. Stats. 1901, p. 1424), providing for priority of location rights on the discovery of mineral in the public domain, whether the rock or earth is rich or poor, provided that in a lode claim the lode may have special reference to the formation and peculiar characteristics of the particular district in which it is found.

3. SAME—LOCATION NOTICE—EVIDENCE OF DISCOVERY. Under Comp. Laws, 208, requiring that a mining claim location notice shall be posted "at the point of discovery," but not requiring that the same shall contain a recital that a discovery has there been made, a notice containing such recital is not *prima facie* evidence of a discovery.

4. SAME. The posting of a notice under such section at a certain point establishes that at that point the locator claims a discovery.

5. SAME—PRESUMPTION OF DISCOVERY—CONFLICTING CLAIMS. Under Comp. Laws, 208, requiring that a notice of the location of a mining claim be posted "at the point of discovery," where conflicting claimants both posted their notices at the same point, such fact, in the absence of evidence to the contrary, warranted a presumption that both based their claims of a discovery on the same natural conditions, and that discovery of mineral, therefore, for the purposes of the case, presumptively existed.

APPEAL from the District Court of the First Judicial District of the State of Nevada, Esmeralda County; *M. A. Murphy*, Judge.

Action by Samuel Fox, and others, against A. D. Meyers, and others. From a judgment in favor of defendants, plaintiffs appeal. **Reversed,** with instructions and directions to grant a new trial.

The facts sufficiently appear in the opinion.

*C. F. Reynolds*, for Appellants:

I. It is claimed by the appellants that they have made out a *prima facie* case, or made such a showing as that which is received or continues until the contrary is shown. If such as in judgment of law continues and is sufficient for the purpose, or where the inference of fact can be legitimately drawn from the evidence, or the presumption reasonably arising therefrom is legally sufficient to prove the material allegations of the complaint, or where it tends to prove it, it must be regarded as proved, or where it tends to prove substantially, or there is any evidence tending to sustain the appellants' case, then, as we understand it, a *prima facie* case has been made out, and the court below should have denied the motion for nonsuit. (*Hanley* v. *Cal. Bridge Co.*, 127 Cal. 232; *Ferris* v. *Baker*, 127 Cal. 520; *Pac. Mutual Ins. Co.* v. *Fisher*, 109 Cal. 566; *Zilmer* v. *Gerichten*, 111 Cal. 73; *Patchen* v. *Keeley*, 19 Nev. 414; *Nesbitt* v. *Pioche Con. M. Co.*, 22 Nev. 262.)

II. The point upon which the motion for a nonsuit was granted and the motion for a new trial denied, and which is the pivotal point in this case is this: Was a discovery made by the appellants such a discovery as was contemplated by the act of Congress? A discovery, as we understand the

meaning of that term and its true definition, as interpreted by the authorities, both judicial and by expert, is that whatever the miner could follow, expecting to find ore, was his lode or vein; some formation within which he could find ore, was his vein or lode. Various definitions have been given by the courts that have had large experience in the trial of cases in which the question of discovery has been adjudicated. The definition so given, as a general rule, applies to the peculiar formation of ore deposits or veins, the appearance and condition of the country rock, the particular district where the claim is located. The words "lode or vein" embrace any description of deposit which is situated in the general mass of the country, and whenever a miner finds a valuable deposit, such as he thinks he would be justified in expending his time and money upon, he has then discovered a lode or vein, no matter what its form may be, or however it may be situated, or whatever its extent. They are not all of the same character. The act was to be broad and liberal enough to apply to any kind of lode or vein of quartz or other mineral-bearing rock, and it was never intended that the value should be determined before the discovery was made; it is the finding of the mineral in the rock that constitutes the discovery and warrants the prospector in making the location of the claim. (*Eureka M. Co.* v. *Richmond M. Co.*, 4 Sawy. 302; Lindley, Mines and Mining, 286–288; *Hayes* v. *Lavringo*, 17 Utah, 185; *Brook* v. *Justice Co.*, 58 Fed. 106; *Migeon* v. *Montana Central Ry.*, 77 Fed. 249; *Stevens* v. *Williams*, 1 Mor. Rep. 573; *United States* v. *Iron S. M. Co.*, 116 U. S. 529; *Reynolds* v. *Iron S. M. Co.*, 128 U. S. 673; Lindley, Mines and Mining, sec. 290, note; *Harrington* v. *Chambers*, 1 Pac. 375; *Davis* v. *Weibold*, 139 U. S. 521; *Tuolumne M. Co.* v. *Maier*, 134 Cal. 583.)

III. We say that the court would have been justified, under the circumstances and proof in this case, to have gone into the realm of presumption that a discovery was made, upon the theory that that which ought to have been and was done was rightly done. The fact of placing the notice there, and making the declaration that discovery was made, is evidence of a valid claim, and, by that one act, the appellants

were given possession and the right of possession for ninety days from the date of placing such notice, and that possession of itself is a presumption that the court below should have indulged in as proof tending to prove that appellants had made a discovery. (*Hahn* v. *Kelly*, 34 Cal. 391; *Tuolumne M. Co.* v. *Maier*, 134 Cal. 583; *English* v. *Johnson*, 17 Cal. 107; Lindley, Mines and Mining, 339; *Erhardt* v. *Boaro*, 8 Fed. 692; *Coryell* v. *Cain*, 16 Cal. 573.) There can be no valid location made of a mining claim upon the public lands of the United States, on a mineral lode or vein, except by a citizen of the United States, or one who has declared his intention to become such. There is no contention in this case that the appellants are not citizens of the United States; the proof is that they are citizens, and were such on the 28th day of May, 1903. The office of that notice of location put there by the appellants was to protect them in their location, while the other acts of location are being performed, such as sinking the discovery shaft, putting up the corner monuments and the side centers, and having the claim surveyed. (*Donahue* v. *Meister*, 88 Cal. 121; *North Noonday* v. *Orient*, 6 Sawy. 299; *Gore* v. *McBrayer*, 18 Cal. 582; *Duryea* v. *Boucher*, 67 Cal. 141; *Weill* v. *Lucerne Co.*, 11 Nev. 200; Lindley, Mines and Mining, 339; *Erhardt* v. *Boaro*, 8 Fed. 692; *Coryell* v. *Cain*, 16 Cal. 573; *Talmadge* v. *St. John*, 129 Cal. 430; *Carter* v. *Bacigalupi*, 83 Cal. 187; *Poujade* v. *Ryan*, 21 Nev. 452; *Southern Cross* v. *Europa M. Co.*, 15 Nev. 385; *Phillpots* v. *Blasdel*, 8 Nev. 66.)

IV. Appellants claim that if they put up a stake at the discovery, giving the name of the lode or vein, date of discovery, and notice of their intention to locate the claim, this is equivalent to actual possession, otherwise the statute serves no useful purpose. The intention of the statute must be that the setting up of the discovery stake, with a notice thereon as required, is equivalent to actual possession for the ninety days within which the discoverer may proceed to sink the discovery shaft the required depth, have the survey made, and mark the lines and make the formal location. That the appellants did not do that work as required within the ninety days cannot prejudice their rights in this case, for the reason

that the respondents prevented them from doing so by their acts and the taking possession of the claim.

*S. E. Vermilyea* and *George A. Bartlett*, for Respondents:

I. Discovery is the source of the miner's title. Discovery in all ages and all countries has been regarded as conferring rights or claims to reward. Gamboa, who represented the general thought of his age, on this subject was of the opinion that the discoverer of mines was even more worthy of reward than the inventor of a useful art. (Halleck's De Fooz on the Law of Mines, p. xxvi.) While in some of the older countries of Europe, as in France and Belgium, the nature of the reward to the discoverer was something less than an absolute preference in the right of enjoyment, yet in Spain and Spanish America there was guaranteed to him an absolute right of property in the mine which he discovered, if he would take the proper measures to "denounce" it and have it duly registered. (Id. p. xxvii.) This wise and liberal policy which pervaded the Mexican system at the time of the conquest and the acquisition of California by the United States became the recognized basis of mining rights and privileges as they were held and enjoyed under the local rules and regulations established by the miners occupying the public mineral land within the newly acquired territory, and in all subsequent legislation, whether congressional, state, or territorial, discovery is recognized as the primary source of title to mining claims. (*Erhardt* v. *Boaro*, 113 U. S. 527.) No location of a mining claim shall be made until the discovery of a vein or lode within the limits of the claim located. (Rev. Stats. 2320.) A location can only rest upon an actual discovery of a vein or lode. (*King* v. *A. & S. M. Co.*, 152 U. S. 222; *Tuolumne M. Co.* v. *Maier*, 134 Cal. 583.) Such discovery must precede the location. (*Hauswirth* v. *Butcher*, 1 Pac. 714; *Upton* v. *Larkin*, 117 Pac. 727; *North Noonday M. Co.* v. *Orient M. Co.*, 1 Fed. 522; *Jupiter M. Co.* v. *Bodie Con. M. Co.*, 11 Fed. 666; *Burke* v. *McDonald*, 33 Pac. 49; *McLaughlin* v. *Thompson*, 2 Colo. 135, 29 Pac. 816; 1 Lindley, sec. 335, p. 602, 2d ed.) Or be in advance of rights. (*Patchen* v. *Keeley*, 19 Nev. 404; *North Noonday M. Co.* v. *Orient M. Co.*, 1 Fed. 522; *Beals* v. *Cone*,

27 Colo. 473, 83 Am. St. Rep. 92, 62 Pac. 948; *Perigo* v. *Erwin*, 85 Fed. 904; *Sands* v. *Cruikshank*, 87 N. W. 589; *Mining Co.* v. *Yarwood*, 67 Pac. 749.)

II.   The fact of a discovery must be proved by the party alleging it as the inception of his possessory right. (*Sands* v. *Cruikshank*, 87 N. W. 589.) Where the location is made without discovery, the land remains public domain until after it be proven a discovery. (*Tuolumne M. Co.* v. *Maier*, 134 Cal. 583.) The proof of a posting of a notice, the recording and making a claim, will not authorize the court to presume a discovery. (*Smith* v. *Newell*, 86 Fed. 56.) If no discovery is made after the acts of location have been performed, the location will date from the time of discovery. (*Beals* v. *Cone*, 83 Am. St. Rep. 92; *Tuolumne M. Co.* v. *Maier*, 134 Cal. 583; *Erwin* v. *Perigo*, 93 Fed. 608; *Jupiter M. Co.* v. *Bodie M. Co.*, 11 Fed. 666; *North Noonday M. Co.* v. *Orient M. Co.*, 1 Fed. 522, 531.) Priority of discovery gives priority of right against naked location and possession without discovery. (*Crossman* v. *Pendery*, 8 Fed. 692; *Beals* v. *Cone*, 62 Pac. 948.)

III.   Summing up in brief, counsel will respectfully submit:   That absolutely no possession follows the location of a piece of ground as a mining claim without actual discovery; and the plaintiffs herein having failed to show any such legal location as will entitle them to possession, it would not matter if defendants herein, or any other persons, had gone on the ground a day or a week after this so-called notice of location was posted.   No appropriation of the ground as a mining claim could be made so as to entitle the appropriator to exclusive possession, without discovery, and, no such discovery being proven, the ground was open to exploration by any citizen of the United States, or person who might have declared his intention to become such.

*C. F. Reynolds*, for Appellants, in reply:

I.   The location, or rather the attempted location, made by respondents, on the 26th day of May, 1903, was made before the expiration of the ninety days allowed by law to the appellants within which to complete their location by doing the various acts as required by the act of Congress in

order to perfect the claim and their title to it. The records show, also, that two or three weeks before the expiration of the time allowed the appellants the respondents made an attempt to locate the same ground, and, upon their attention being called to the notice, they desisted until the 26th day of August, 1903, when as Mr. Myers says, "Thinking that the notice had run out, and I was locating government ground." Preliminary to taking up the questions which are and must be decisive of this case as it now appears and comes before this court, let us for a moment discuss the office of the notice of location. In making a location under the act of Congress we claim that the office of the notice of location is to protect the locator or locators while performing the acts required to be performed by that act in order to perfect their title to the land claimed. That is, as has been held, it protects the locator or locators in the possession of the same during the ninety days prescribed by the statutes of Nevada to be a reasonable time within which to do the work. (See authorities heretofore cited in appellants' opening brief.)

II.   Having thus stated what we understand to be the office of a notice of location, and the construction placed upon it by all the authorities, we shall contend that the notice of location placed on the ground by the appellants was some evidence; that there was a proper location made, and in that location that a discovery was made of a vein or lode. Under the authorities cited we say that the lower court was wrong in its construction of the statute; that appellants were required to mark the boundaries with mounds or stakes when they placed the notice of location upon the ground.

By the Court, Norcross, J.:

This is an action of ejectment to recover possession of a certain mining claim in Goldfield Mining District, Esmeralda County. Upon the trial of the cause in the court below, after plaintiffs had offered their evidence, counsel for respondents interposed a motion for a nonsuit. The motion was granted, and judgment entered accordingly. Plaintiffs appeal from the judgment, and from an order denying their motion for a new trial.

The allegations of plaintiffs' complaint which are material in the consideration of the questions presented upon this appeal, are substantially as follows: That on the 28th day of May, 1903, the said plaintiff Carl Schmidt, for himself, and on behalf of the other said plaintiffs, located, in accordance with the mining laws, a certain mining claim in the Goldfield Mining District, by erecting thereon a location monument, and posting a location notice therein, naming and designating said claim as the "Ramsey Extension." That on the 26th day of August, 1903, while plaintiffs were in the lawful possession of said claim, the defendants wrongfully, unlawfully and fraudulently entered into and upon said mining claim, and by their wrongful, unlawful and fraudulent acts did oust and eject the plaintiffs from the possession of said mining claim, and ever since said time have continued to so wrongfully, unlawfully, and fraudulently withhold said claim from the plaintiffs. That on the said 26th of August, 1903, the said plaintiff Fox, for and on behalf of himself and the other of said plaintiffs, did go upon said mining claim to complete the location of the same, in accordance with the requirements of law, but was prevented from so doing by reason of the aforesaid wrongful acts of defendants. The defendants' answer consists of a specific denial of each of the allegations of the complaint.

The principal question, presented in this case, and the only one argued by counsel for respondents, is whether the evidence offered and admitted was sufficient to entitle plaintiffs to recover under the pleadings. The trial court, in ruling upon the motion for a nonsuit, held that the plaintiffs had failed to show that they had made a discovery upon which a mining location could be based. As the question whether there was any evidence upon the part of the plaintiffs establishing, or tending to establish, a discovery as a basis for the location of the mining claim called the "Ramsey Extension," has been the only material question considered by counsel upon both sides, the evidence will be reviewed solely with reference to this one question. Excluding all reference to matters clearly immaterial, the following is substantially the testimony admitted upon the trial:

T. L. Oddie, one of the plaintiffs, testified as follows: "I know Samuel Fox, James Ennis, and Carl Schmidt. I know the mining district called 'Grandpa,' now called and known as 'Goldfield Mining District.' I know the greater part of land in controversy in this section. * * * Mr. Fox, Mr. Ennis, Mr. Schmidt, and myself were partners in locating some claims in that district. Either in May or a short time afterwards, I paid the expenses of Mr. Schmidt to Grandpa Mining District. * * * Mr. Schmidt brought me some rock to have it assayed. I had the rock assayed, and Mr. Schmidt came to the office afterwards to learn the assay. * * * Q. About when was that location made? A. * * * I know it was in the spring of 1903, I think it was about in May. Q. If the original location notice should say the 28th day of May, would that be about correct? A. Yes, sir, as far as I know. * * * I know the defendant Beauchamp. I knew him on or about the 28th day of May, 1903. Some little time after that I had a conversation with Beauchamp in my office. The question in regard to this suit came up, and Mr. Beauchamp told me some of the facts connected with the relocation of this ground. He said, 'Mr. Myers and Mr. Murphy,' I have forgotten which, spoke to him about the ground—about relocating it. Mr. Beauchamp told me that Mr. Myers or Mr. Murphy were going to locate this ground. He was on the ground when they were going to locate it; that was two weeks before the claim ran out. He said they wanted to locate that ground, and he pointed out to them that this particular claim had not run out."

The testimony of A. D. Myers, one of the defendants, was taken by deposition. His testimony was admitted as follows: "Q. Where is your place of residence? A. Goldfield, Nevada. Q. What is your occupation? A. Miner and prospector. Q. Have you located any mining claims up there? A. Yes, sir. Q. Mr. Myers, have you a notice of location of a claim in your possession that was upon the claim known as the 'Idol's Eye' on the 26th day of August, 1903? A. Well, I don't know whether the notice I have was on then or not. (Here the witness hands a notice to Mr. Reynolds, attorney for plaintiffs.) * * * Q. Did you see any notice on the

claim that day? A. I am quite positive that I did not; it was on the 27th or 28th of August. Q. Did you see the notice that you have presented here on the claim on the 27th or 28th? A. Yes, sir, I did. Q. Do you know W. I. Beauchamp? A. I know a man named Billy Beauchamp. Q. Did Billy Beauchamp have anything to do with the notice on the Idol's Eye? A. I do not know. I was not there at the time. Q. Were you one of the original locators of the Idol's Eye? A. That claim was located for me. Q. By whom? A. I think it was Billy Beauchamp. Q. Mr. Myers, where did you get this notice of location of quartz claim, the one that you have handed to me? A. I got it out of the Idol's Eye location monument. Q. And what day did you get it? A. I can't recall the date. It was some time in September or October. Q. Did you take it from the claim called the Idol's Eye yourself? A. Yes, sir. * * * Q. * * * Do you know when the notice of location was placed on the Idol's Eye? A. I know when I found it, and that is all I know. Q. Do you know who placed that notice of location upon the Idol's Eye? A. I presume Beauchamp did; he was the locator; he located it for me. Q. That is the W. I. Beauchamp that we have referred to? A. I think it is. * * * Knowing that Billy Beauchamp was going to locate a certain piece of ground covered by this location [petitioner's Exhibit A] or a portion thereof, I asked him to locate me in on it. On the 27th or 28th day of August, 1903, I came by where he was working. I saw two monuments. I went to one of them. I found that he, Billy Beauchamp, or whatever you call him, had located for me this said Idol's Eye mining claim."

Samuel Fox, one of the plaintiffs, testified as follows: "I know James Ennis, Carl Schmidt, and T. L. Oddie. I know the mining district called 'Grandpa Mining District.' * * * I located ground in the Grandpa District about the 28th day of May, 1903. The name of the claim that I located was the 'Ramsey Extension,' which was located in Goldfield Mining District. * * * On or about the 25th day of August I left Tonopah to go and finish some work that was started on the claim. We camped on the other side of Klondike Wells. On the morning of the 26th we hitched up and started out

for what was called the 'Grandpa District,' we got out there
on the ground, and the first man I met was Mr. Beauchamp;
he was coming from the mountain with a load of wood.
When the location was made on the 28th day of May, about
that time we made an agreement with Schmidt that he,
Schmidt, should go out and complete the work on the ground.
* * * He went out the second time. 'After his return
about the 6th or 7th of June, * * * I went out to
Grandpa District. My purpose in going out was to complete
the work. When I got there I looked for a notice with our
names on so I could tell the ground. I looked all over the
country. Q. Did you find any location notice with your
name upon it? A. I did not, sir. * * * From informa-
tion that I received I made an examination of the mining
claim represented in the complaint, and made inquiries.
I looked all over the ground to see if I could find
any location notice of mine, and I could not. I met Mr.
Beauchamp in that vicinity. I said: 'Billy, would you
show me where my ground is?' He pointed me an
opposite direction from where my ground was. I went in
that vicinity and looked all around, and could not find it.
Later on in the day, before I left there, I went to him again
and said: 'Billy, will you show me where my ground is?'
He answered, 'Up there,' and pointed in a different course
from where my ground was. * * * Q. Had you any infor-
mation as to what vicinity your claim lay? A. Yes, sir, I
was informed it was adjoining the Ramsey ground. Q. Now
then, did you find the Ramsey ground? A. Yes, sir, I think
I did, the Ramsey ground. Q. Did you look faithfully all
around the Ramsey ground to see if you could find the
location of the Ramsey Extension? A. I looked all around,
but could not find anything. * * * I know now where the
notice of location of the Ramsey Extension mining claim
was placed. Q. Was there any outcropping in or near that
monument or location notice? A. There was. Q. How far
from it and in what direction? A. It runs in about a north-
easterly direction, maybe forty or fifty feet from the mon-
ument. Q. Do you know anything about that cropping as
to what it contained, if it contained anything? A. I have

seen an assay from it. * * * Q. Do you know the rock that you had assayed came from this location? A. The rock was sent from that location. When I speak of the ground I refer to the ground in controversy in this action. I met Mr. Beauchamp on the ground about thirty or forty feet from the location monument. One of the Beauchamps was digging a hole, and the other was hauling wood. At that time there was a notice of location by defendants of the Idol's Eye; that was the 26th of August."

James Ennis, one of the plaintiffs, testified as follows: "On or about the 28th day of May, 1903, Mr. Oddie, Mr. Fox, and myself entered into an agreement with Mr. Schmidt to locate and prospect for mining claims. * * * He (Schmidt) returned the following Saturday; I think it was the 30th. He returned and brought with him some samples. I saw the samples. * * * The following Sunday we took the samples to Mr. Oddie's office, and asked Mr. Oddie to have them assayed, and the rock showed values. When it showed values, Mr. Fox, Mr. Oddie, and I decided to send Mr. Schmidt there to do the location work, and if I remember right, on the 3d day of June he left Tonopah for Grandpa to do the location work on this claim. We furnished him with a team and provisions. Q. Do you know that he did any work? A. All I know is what he told me after he returned. After he returned we decided to send him there again to complete the work. By that I mean put the hole down the proper depth according to law; he had only dug a few feet. He did not go right back again. Q. Did you hear anything that he did or did you know of anything? A. He dug a hole out there. I learned that he had discovered a vein, and we decided to complete the work—decided to send Mr. Schmidt out there again to complete the work. I left Tonopah about the 7th day of August, 1903. The day I was leaving I saw Mr. Fox. I told him I was out of work, and wanted him to go out and do the work, and whatever my share was I would contribute. From what Mr. Schmidt told me I know that the notice of location which was offered in evidence was taken from the Ramsey Extension."

Harry Stimler testified as follows: "In 1903 I resided in

Goldfield. I know the Grandpa District, and knew it in 1903.
I know the mining claim located there under the name of
T. L. Oddie, James Ennis, Samuel Fox, and Carl Schmidt.
Q. Do you know a claim located on or about the 26th day of
August, 1903, in the Grandpa Mining District, known as the
'Idol's Eye Claim'? A. I know where the location of the
Idol's Eye claim is. The Idol's Eye takes in a part of the
Ramsey Extension; the claim located by Oddie, Ennis, Fox,
and Schmidt. I don't know whether it takes it all in or not.
Q. Upon that location did you see any indications of an out-
cropping, I mean the Ramsey Extension? A. Yes, sir, I saw
the outcropping. Q. Mr. Stimler, did you, on or about the
20th day of August, see any one working upon the Ramsey
Extension as you know it now? A. Yes, sir. The Beauchamp
brothers, they continued working there several days. I had
a conversation with Beauchamp on or about the 26th day of
August, 1903, with reference to the Ramsey Extension. He
said Foxy Grandpa had been out there before, looking for
his ground, down where they were working; asked him if he
knew where it was, and he said 'No'; told him he 'thought
it was over near Columbia somewhere.' I don't remember
what all was said. I remember that he said 'they had fooled
him.'"

John W. Cuddeback, testified as follows: "I was residing
in Goldfield on or about the 28th day of May, 1903, and
resided from that time up until the 26th of August, 1903.
My business is that of mining and teaming. I have been
mining about twenty years. Q. Do you know the general
appearance of the land in and about Goldfield, as to its being
mineral, or otherwise? A. I do. Q. Do you know the land
claimed and known as the 'Idol's Eye Mining Claim'? A.
Yes, sir. Q. Do you know the land that was claimed and is
the Ramsey Extension mining claim? A. Yes, sir. Q. On
the Ramsey Extension is there what is known and called
an 'outcropping'? A. There is."

The following is a copy of the location notice referred to
in the deposition of A. D. Myers, which was admitted in
evidence, marked "Plaintiffs' Exhibit A":

"Notice of Location of Quartz Claim. Notice is hereby

given to all to whom it may concern: That James Ennis, S. Fox, L. F. Oddie, C. Schmidt, citizens of the United States, over the age of 21 years, having discovered a vein or lode of quartz, or rock in place, bearing ............... within the limits of the claim hereby located, have this day under and in accordance with the Revised Statutes and other laws of · the United States, located 1,500 linear feet of this vein or lode, with surface ground 600 feet in width, situated in Grandpa Mining District, County of Esmeralda, State of Nevada, and known as the Ramsey Ext. quartz mining claim, and extending ............... feet to ............... and ............... feet to ............... from this notice ............... at the discovery or prospect shaft, the exterior boundary of this claim being distinctly marked by reference to some object or permanent monuments, and more particularly described as follows, to wit: Commencing from this location monument and running 300 feet southerly and 1,200 feet northerly direction. And we intend to hold and work said claim as provided by the local customs and rules of miners and the mining statutes of the United States. Dated on the ground this 28th day of May, A. D. 1903. Attest: James Ennis."

In considering the question whether the evidence produced by the plaintiffs was sufficient to establish the fact of a discovery by them upon the Ramsey Extension claim, it must be understood that the evidence is to be tested by the rules governing in the case of rival claimants to the same mining ground, taken in connection with the liberality with which evidence is construed in favor of the plaintiffs on a motion for a nonsuit. Upon the latter proposition, this court in the case of *Patchen* v. *Keeley*, 19 Nev. 409, 14 Pac. 347, had occasion to say: "In considering the court's ruling in granting the nonsuit, we must take as proven every fact which the plaintiff's evidence tended to prove and which was essential to his recovery, and give him the benefit of all legal presumptions arising from the evidence." We also quote with approval the following language of the Supreme Court of California in the case of *Hanly* v. *California Bridge Co.*, 127 Cal. 237, 59 Pac. 577, 47 L. R. A. 597: "The motion for a nonsuit admits the truth of the plaintiff's evidence, and

every inference of fact that can be legitimately drawn there-from, and upon such motion the evidence should be most strongly interpreted against the defendants.  This rule must be applied to all the evidence submitted by plaintiff."

In *Migeon* v. *Montana Cent. Ry. Co.*, 77 Fed. 254, 23 C. C. A. 161, the United States Circuit Court of Appeals, in an opinion written by Judge Hawley, points out in the follow-ing manner the distinction that exists in various classes of cases, upon the question of the proof that will be required to establish a discovery: "There are four classes of cases where the courts have been called upon to determine what consti-tutes a lode or vein within the intent of different sections of the Revised Statutes: (1) Between miners who have located claims on the same lode, under the provisions of section 2320 [U. S. Comp. Stats. 1901, p. 1424]. (2) Between placer and lode claimants under the provisions of section 2333 [U. S. Comp. Stats. 1901, p. 1433]. (3) Between mineral claimants and parties holding townsite patents to the same ground. (4) Between mineral and agricultural claimants of the same land.  The mining laws of the United States were drafted for the purpose of protecting the *bona fide* locators of mining ground, and at the same time to make necessary provision as to the rights of agriculturists and claimants of townsite lands.  The object of each section, and of the whole policy of the entire statute, should not be over-looked.  The particular character of each case necessarily determines the rights of the respective parties, and must be kept constantly in view, in order to enable the court to arrive at a correct conclusion.  What is said in one character of cases may or may not be applicable in the other.  Whatever variance, if any, may be found in the views expressed in the different decisions touching these questions arises from the difference in the character of the cases, and the advanced knowledge which experience in the trial of the different kinds of cases brings to the court.  *  *  *

"The fact is that there is a substantial difference in the object and policy of the law between the cases where the determination of the question as to what constitutes the discovery of a vein or lode between different claimants of

the same lode, under section 2320 (U. S. Comp. Stats. 1901, p. 1424), on the one hand, and a lode known to exist within the limits of a placer claim at the time application is made for a patent therefor, under section 2333 (U. S. Comp. Stats. 1901, p. 1433), on the other. * * * The question as to what constitutes a discovery of a vein or lode under the provisions of section 2320 of the Revised Statutes (U. S. Comp. Stats. 1901, p. 1424) has been decided by many courts. All the authorities cited by appellants are referred 'to in *Book* v. *Mining Co.* (C. C.), 58 Fed. 106, 121. The liberal rules therein announced are substantially to the effect that when a locator of a mining claim finds rock in place containing mineral in sufficient quantity to justify him in expending his time and money in prospecting and developing the claim, he has made a discovery within the meaning of the statute, whether the rock or earth is rich or poor, whether it assays high or low, with this qualification: that the definition of a lode must always have special reference to the formation and peculiar characteristics of the particular district in which the lode or vein is found. It was never intended that in such a case the court should weigh scales to determine the value of the mineral found as between a prior and subsequent locator of a mining claim on the same lode."

The same court in *Shoshone M. Co.* v. *Rutter*, 87 Fed. 801, 808, 31 C. C. A. 223, again said: "The purpose of the statute, in requiring that 'no location of a mining claim shall be made until the discovery of a vein or lode within the limits of the claim located,' was to prevent frauds upon the government by persons attempting to acquire patents to land not mineral in its character. But as was said in *Bonner* v. *Meikle*, (C. C.), 82 Fed. 697: 'It was never intended that the court should weigh scales to determine the value of mineral found, as between a prior and subsequent locator of a mining claim on the same lode.' The location of the Kirby was made in 1886. The discovery of mineral then made was sufficient to induce the locators and their grantees to perform the amount of annual labor thereon as required by the mining laws—to expend their time and money in prosecuting the work thereon—in the belief and expectation of finding ore of

profitable value therein." The following authorities are to the same effect: (*Book* v. *Justice Mining Co.* (C. C.), 58 Fed. 120; *McShane* v. *Kenkle,* 18 Mont. 208, 44 Pac. 979, 33 L. R. A. 851, 56 Am. St. Rep. 579; *Muldrick* v. *Brown* (Or.), 61 Pac. 428; *Iron S. M. Co.* v. *Cheesman,* 116 U. S. 529, 6 Sup. Ct. 481, 29 L. Ed. 712; *Harrington* v. *Chambers* (Utah), 1 Pac. 375; *Ambergris M. Co.* v. *Day* (Idaho), 85 Pac. 109; 1 Lindley on Mines, 2d ed. 336.)

The evidence in this case shows that, at or near the location monument of the Ramsey Extension claim, there was an outcropping, and we think it may be inferred from the evidence that this outcropping carried values. We think it also may be inferred from the evidence that the plaintiffs intended to base their claim of a discovery upon this outcropping when they erected the monument and posted their notice of location of the Ramsey Extension claim upon or near it. It is not necessary to determine whether this state of facts alone would be sufficient to justify the trial court in denying the motion for a nonsuit; but, taken in connection with other facts which are shown, or which may be inferred from the evidence, we think the showing was sufficient to require that the motion be denied. The contention of counsel for appellants has not been questioned that the location monument of the Idol's Eye claim and the location monument of the Ramsey Extension claim were one and the same. This fact may be inferred from the evidence, and for the purposes of the motion it should be considered as an established fact. Our statute (Comp. Laws, 208) requires that the notice of location be posted "at the point of discovery." Therefore, when a locator erects a location monument and puts his location notice thereon, he, in effect, declares that at that point he has made a discovery. This is so in order that another prospector going upon the same ground may not only see that some one else claims to have initiated a location, but upon what discovery, or alleged discovery, if any, such claim is based. Many years prior to the adoption of our statute this court had occasion to refer to the importance of having the location notice posted at an appropriate point upon or near the ledge.

In the case of *Phillpotts* v. *Blasdel*, 8 Nev. 75, the court said: "In order to hold a ledge, it is not necessary that the notice should be placed on the ore or any part of the vein or lode. It is sufficient, as the jury was instructed, if the notice is placed in such reasonable proximity and relation to the ledge, as in connection with the work done under it to give notice to all comers what ledge is intended."

In the case of *Gleeson* v. *Mining Co.*, 13 Nev. 465, the court said: "A notice is generally, and for safety ought always to be, posted immediately upon the discovery of the vein, before there is any time to survey the ground and ascertain the bearings and distances of natural objects or permanent monuments in the neighborhood; and, besides, the claim referred to by the notice is always sufficiently identified by the fact that it is posted on, or in the immediate proximity to, the croppings. A notice, claiming a location on 'this vein' has only one meaning."

It will be seen that our statute has gone farther and makes it the duty of the locator, after he has made a discovery, to put his location notice at such point of discovery. Proof of posting a location notice at a certain point, containing a recital therein that a discovery had there been made, as in the case of the Ramsey Extension notice, would not be evidence *prima facie* of a discovery, as contended for by counsel for appellant, for the reason, if for none other, that the statute does not require the making of such a declaration in the notice. (1 Lindley on Mines, 2d ed. 392; 2 Jones on Evidence, 521.) Proof, however, that a notice was posted at a certain point establishes that at that point the locator claims a discovery. When it was shown that the Idol's Eye location notice was placed at the same point as that of the Ramsey Extension, it put the defendants in this action also in the position of claiming a discovery at the same point that the plaintiffs did. Both sides claiming a discovery at the same point would warrant the presumption, in the absence of a showing to the contrary, that both based their claim of a discovery upon the same natural conditions, and, where such a showing exists, the court is justified, at least for the purpose of the motion, in pre-

suming the existence of a discovery, because of the fact that there is, in effect, an admission by both parties that such discovery exists.  If it were shown that a person had posted a location notice where there were no indications whatever of a lode or vein, and that subsequently another person, as a result of sinking a shaft at that point, or by some other development work, had discovered a vein not indicated upon the surface of the ground, it could hardly be said that such second party, by reason of the fact that he posted his location notice at the same point as the first claimant, thereby admitted that such prior claimant had also there made a discovery.  But such is not the state of facts disclosed by the evidence in this case.  Indulging in all legal presumptions, and construing the evidence, under the rule heretofore quoted, most favorably in favor of the appellants, we are compelled to say that the evidence warrants the inference, at least, that both parties to this action are claiming the right to hold the ground in controversy under the same claim of discovery.  Under such a state of facts the evidence upon the question of discovery was sufficient upon which to have based a denial of the motion for a nonsuit.

For the reasons given, the judgment and order are reversed, with directions to the lower court to grant a new trial.